**Leta E. Gorman**, OSB # 984015
E-mail:  leta.gorman@jordanramis.com
**Shelly M. Damore**, OSB #022837
E-mail:  shelly.damore@jordanramis.com
JORDAN RAMIS PC
Attorneys at Law
Two Centerpointe Dr 6th Flr
Lake Oswego OR 97035
Telephone:  (503) 598-7070
        Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **JANE and JOHN DOE**, individually and as Parents and Next Friends of **DOE CHILD**, a minor, | Case No. _____ |
| Plaintiffs, | |
| v. | **COMPLAINT**<br>**28 USC § 1331**<br>**DEMAND FOR JURY TRIAL** |
| **LAKE OSWEGO SCHOOL DISTRICT**; an Oregon municipal corporation; **HEATHER BECK**, an individual; **JENNIFER SCHIELE**, an individual; **IAN LAMONT**, an individual; **KAYLA NORDLUM**, an individual; **ASHLEY NORDLUM**, an individual; **SUZANNE YOUNG**, an individual; and **UNKNOWN STAFF**, unknown individuals | |
| Defendants. | |

For their complaint against defendants, plaintiffs allege as follows:

## I.  INTRODUCTION

1.      This is a tort action brought by the parents (both individually and on behalf of

their daughter) a 14 year old freshman at Lakeridge High School, a public high school in the

Lake Oswego School District in Oregon.  Plaintiffs were forced to bring this lawsuit as a result

PAGE 1 – COMPLAINT

of: (a) defendants' failure to act in a manner consistent with the policies espoused by both the high school and the school district; (b) defendants' failure to comply with the clear requirements of Oregon state law; and (c) defendants' failure to protect the rights afforded to plaintiffs under the United States Constitution. Plaintiffs have previously provided notice under the Oregon Tort Claims Act.

2.      This case arises from activities related to plaintiff Doe Child's selection for the dance team at Lakeridge High School. She is no longer a member of the dance team because, despite being ordered to remain silent about the inappropriate, illegal, and immoral activities sponsored, supported, and sanctioned by defendants, Doe Child made the courageous decision to speak up about the activities. As a result of speaking up, Doe Child has been and continues to face bullying, harassment, and retaliation from defendants. Doe Child has been forced off the dance team. Doe Child's parents have also been harassed incessantly, both privately and publically, and Doe Child's mother has been ridiculed for being of Brazilian descent. Defendants' conduct has interfered with Doe Child's rights under the United States Constitution.

3.      In addition to seeking damages to compensate Doe Child and her parents for their psychological and other injuries resulting from defendants' conduct, plaintiffs seek declaratory and injunctive relief that would put an end to the culture existing at Lakeridge High School that knowingly allows its staff, students, and volunteers to (a) interfere with a student's freedom of speech and right to an education and (b) assault, batter, haze, bully, cyberbully, harass, false imprison, sexually harass, and retaliate.

4.      Plaintiffs bring this action to seek damages and other legal redress for conduct and practices of all defendants, which were entities and individuals acting, at all times material to this Complaint, through its agents, employees, volunteers, and assigned and/or associated parents, and which conduct and practices have infringed upon lawful rights, including

constitutional rights afforded by the Constitution and Laws of the United States and the Constitution of Laws of the State of Oregon.

5.    The acts described in this Complaint involve several separate events, each of which imposes liability on defendants.

## II.  JURISDICTION AND VENUE

6.    Jurisdiction is conferred on this court by 28 U.S.C. § 1331 as this action arises under the laws of the United States, specifically 42 U.S.C. § 1983, and the First and Fourteenth Amendments to the United States Constitution.

7.    Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction of the claims based on Oregon law as they are related to claims within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

8.    Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the claims set forth herein occurred within the jurisdiction of this Court.

## III.  PARTIES

9.    Plaintiffs, John and Jane Doe, individually and as Parents and Next Friends of Doe Child, a minor, are residents of the city of Lake Oswego, Clackamas County, Oregon.

10.    Plaintiff, Doe Child, was born on XX/XX/2001.  Doe Child attended defendant Lakeridge High School, a public high school in the city of Lake Oswego, Clackamas County, Oregon, at all relevant times herein.

11.    Defendant, Lake Oswego School District (hereinafter referred to as "District"), is a municipal corporation existing by and under the laws of the State of Oregon, with its principal place of business located in the City of Lake Oswego, Clackamas County, Oregon.

12.    Defendant Heather Beck (hereinafter referred to as "Beck"), is an agent of the District and was at all times relevant hereto, employed by, and was an agent of the District, as

PAGE 3 – COMPLAINT

the superintendent.  Pursuant to District policy, as superintendent, Beck serves as the District's chief executive officer and has general supervision of all district schools, personnel and departments. (*See*, Lake Oswego School District CB Policy, which is attached hereto as Exhibit 1, and incorporated fully herein.) Beck is responsible for the health, vitality, well being and performance of the District. As superintendent, Beck has the ability, authority, and duty to take corrective action on behalf of the District to stop harassment, violence, hazing, bullying, cyberbullying, child abuse and retaliation, and to discipline perpetrators of such discrimination and harassment.  (*See*, Lake Oswego School District 7J Policy, which is attached hereto as Exhibit 2, and incorporated fully herein.)

13.     Defendant, Jennifer Schiele (hereinafter referred to as "Schiele"), is an agent of the District and was at all times relevant hereto, employed by, and was an agent of District, as the principal of Lakeridge High School.  As principal, Schiele has final policy making authority and duties with respect to the day-to-day enforcement of Lakeridge High School's discipline procedures, its anti-harassment and bullying policies, its Athletic Policy and Guidelines (including the athlete Code of Conduct), and its Volunteer Guidelines.  (*See* true and correct copies of the Lakeridge High School 2014-2015 Handbook, the Lakeridge High School Athletic Policy and Guidelines, and the Lake Oswego School District Volunteer Guidelines, which are attached hereto as Exhibits 3, 4, and 5, respectively, and incorporated fully herein.)

14.     As principal, Schiele has the ability, authority and duty to take corrective action on behalf of the District to ensure a student's constitutional rights are not infringed upon; to stop harassment, violence, hazing, bullying, cyberbullying, child abuse, and retaliation; and to discipline perpetrators of such actions.

15.     Defendant, Ian Lamont (hereinafter referred to as "Lamont"), individually, and as an agent of the District, was at all times relevant hereto, employed by and was an agent of the District as the Athletic Director of Lakeridge High School.  As the Athletic Director, Lamont had

PAGE 4 – COMPLAINT

the ability, authority, and duty to take corrective action on behalf of the District and High School to enforce the Lakeridge High School Athletic Policy and Guidelines.

16.    Defendant, Kayla Nordlum (hereinafter referred to as "Nordlum"), individually, and as an agent of the District, was at all times relevant hereto, employed by and was an agent of the District as the Head Coach for the Lakeridge High School Dance Team.  On social media, Nordlum uses the name "Kayla Diane."  Nordlum has tried to justify certain decisions she has made by claiming that (a) she has been a dance team coach for 9 years and (b) she has only been a dance team coach for 1 year.  During the events at issue in this lawsuit, Nordlum was 24 years old.

17.    As the Dance Team Coach, Nordlum had the ability, authority, and duty to take corrective action on behalf of the District and High School to enforce the Lakeridge Junior Cheer & Dance Team Handbook, which is attached hereto as Exhibit 6 and fully incorporated herein.

18.    Defendant, Ashley Nordlum (hereinafter referred to as "Ashley"), individually, and as an agent of the District, was at all times relevant hereto, employed by and was an agent of the District as the Assistant Coach for the Lakeridge High School Dance Team.  As the Dance Team Assistant Coach, Ashley had the ability, authority, and duty to take corrective action on behalf of the District and High School to enforce the Lakeridge Junior Cheer & Dance Team Handbook.

19.    Defendant, Suzanne Young (hereinafter referred to as "Young"), individually, and as an agent of the District, was at all times relevant hereto, an approved volunteer and was an agent of the District and was in charge of the finances and public relations for the Lakeridge High School Dance Team.  Young did not have a student at Lakeridge High School but served as a volunteer, subject to the District Volunteer Guidelines.

20.     Defendants, unknown staff and volunteers of the District (hereinafter referred to as "Unknown Staff"), at all times relevant hereto, were employed by and/or were agents of the District.

21.     Plaintiffs allege that each of the defendants performed, participated in, aided and/or abetted in some manner the acts averred in this action, proximately caused the damages averred below, and are liability to plaintiffs for the damages and other relief sought in this action.

## IV.  DISTRICT POLICIES

22.     The District has the following policies, which were, at all relevant times, applicable to defendants' conduct:

**a.      Hazing/Harassment/Intimidation/Bullying/Menacing/Cyberbullying/ Teen Dating Violence**

* * * Hazing, harassment, intimidation or bullying, menacing and acts of cyberbullying by students, staff or third parties is strictly prohibited and shall not be tolerated in the district.

**Definitions**

1. "Third parties" include, but are not limited to, coaches, school volunteers, parents, school visitors, service contractors or others engaged in district business, such as employees of businesses or organizations participating in cooperative work programs with the district and others not directly subject to district control at interdistrict and intradistrict athletic competitions or other school events.

2. "District" includes district facilities, district premises and nondistrict property if the student or employee is at any district-sponsored, district-approved or district-related activity or function, such as field trips or athletic events where students are under the control of the district or where the employee is engaged in district business.

3. "Hazing" includes, but is not limited to, any act that recklessly or intentionally endangers the mental health, physical health or safety of a student/staff for the purpose of initiation or as a condition or precondition of attaining membership in, or affiliation with, any district-sponsored/work activity or grade level attainment, (i.e., personal servitude, sexual stimulation/sexual assault, forced consumption of any drink, alcoholic beverage, drug

PAGE 6 – COMPLAINT

or controlled substance, forced exposure to the elements, forced prolonged exclusion from social contact, sleep deprivation or any other forced activity that could adversely affect the mental or physical health or safety of a student); requires, encourages, authorizes or permits another to be subject to wearing or carrying any obscene or physically burdensome article; assignment of pranks to be performed or other such activities intended to degrade or humiliate. It is not a defense against hazing that the student subjected to hazing consented to or appeared to consent to the hazing.

4. "Harassment, intimidation or bullying" means any act that substantially interferes with a student's/staff member's educational benefits, opportunities or performance, that takes place on or immediately adjacent to school grounds, at any school-sponsored activity, on school-provided transportation or at any official school bus stop, having the effect of:

a. Physically harming a student or damaging a student's/staff member's property;

b. Knowingly placing a student or staff member in reasonable fear of physical harm to the student/staff member or damage to the student's/staff member's property;

c. Creating a hostile educational/work environment including interfering with the psychological well being of the student/staff member and may be based on, but not limited to, the protected class of the person.

"Harassment" also includes, but is not limited to, any act which subjects an individual or group to unwanted, abusive behavior of a nonverbal, verbal, written or physical nature on the basis of the protected class of the person.

Intimidation" also includes, but is not limited to, any threat or act intended to tamper, substantially damage or interfere with another's property, cause substantial inconvenience, subject another to offensive physical contact or inflict serious physical injury on the basis of the protected class of the person.

5. "Protected class" means a group of persons distinguished, or perceived to be distinguished, by race, color, religion, sex, sexual orientation[1], national origin, marital status, familial status, source of income or disability.

* * *

PAGE 7 – COMPLAINT

7. "Cyberbullying" is the use of any electronic communication device to harass, intimidate or bully. Students and staff will refrain from using personal communication devices or district property to violate this policy.

8. "Retaliation" means hazing, harassment, intimidation or bullying, menacing, teen dating violence and acts of cyberbullying toward a person in response to a student for actually or apparently reporting or participating in the investigation of hazing, harassment, intimidation or bullying, menacing, teen dating violence and acts of cyberbullying or retaliation.

9. "Menacing" includes, but is not limited to, any act intended to place a district employee, student or third party in fear of imminent serious physical injury.

All complaints about behavior that may violate this policy shall be promptly investigated. Any employee who has knowledge of conduct in violation of this policy or feels he/she has been a victim of hazing, harassment, intimidation bullying, menacing, or an act of cyberbullying in violation of this policy shall immediately report his/her concerns to the principal or superintendent who have overall responsibility for all investigations. Any employee who has knowledge of incidents of teen dating violence that took place on district property, at a district-sponsored activity or in a district vehicle or vehicle used for transporting students to a district activity shall immediately report the incident to the principal or superintendent.

Failure of an employee to report an act of hazing, harassment, intimidation or bullying, menacing, or an act of cyberbullying to the principal or superintendent may be subject to remedial action, up to and including dismissal. Remedial action may not be based solely on an anonymous report.

Any student who has knowledge of conduct in violation of this policy or feels he/she has been a victim of hazing, harassment, intimidation or bullying, menacing, teen dating violence or act of cyberbullying in violation of this policy is encouraged to report his/her concerns to the principal or superintendent who have overall responsibility for all investigations. Any volunteer who has knowledge of conduct in violation of this policy is encouraged to immediately report his/her concerns to the principal or superintendent who have overall responsibility for all investigations. This report may be made anonymously. A student or volunteer may also report concerns to a teacher or counselor

PAGE 8 – COMPLAINT

who will be responsible for notifying the appropriate district official.

Complaints against the building principal or supervisor shall be filed with the superintendent. Complaints against the superintendent shall be filed with the Board chair. The complainant shall be notified of the findings of the investigation and, as appropriate, that remedial action has been taken. The complainant may request that the superintendent and the Board review the actions taken in the initial investigation, in accordance with administrative regulations.

Students whose behavior is found to be in violation of this policy will be subject to discipline, up to and including expulsion. The district may also file a request with the Oregon Department of Transportation to suspend the driving privileges or the right to apply for driving privileges of a student 15 years of age or older who has been suspended or expelled at least twice for menacing another student or employee, willful damage or injury to district property or for the use of threats, intimidation, harassment or coercion. Staff whose behavior is found to be in violation of this policy will be subject to discipline, up to and including dismissal. Third parties whose behavior is found to be in violation of this policy shall be subject to appropriate sanctions as determined and imposed by the superintendent or Board.

Individuals may also be referred to law enforcement officials. Staff will be reported to Teacher Standards and Practices Commission, as provided by OAR 584-020-0041.

Retaliation against any person who reports, is thought to have reported, files a complaint or otherwise participates in an investigation or inquiry is prohibited. Such retaliation shall be considered a serious violation of Board policy and independent of whether a complaint is substantiated. False charges shall also be regarded as a serious offense and will result in disciplinary action or other appropriate sanctions.

* * *

The district shall incorporate into existing training programs for staff information related to the prevention of, and the appropriate response to, acts of harassment, intimidation or bullying, teen dating violence and acts of cyberbullying.

The superintendent shall be responsible for ensuring annual notice of this policy is provided to students, staff and third parties in a

student or employee handbook, school and district websites, and
the school and district office. Complaint procedures, as established
by the district, shall be followed.

The principal and the superintendent are responsible for ensuring
that this policy is implemented.

(*See*, Exhibit 2.)  As described in more detail throughout this Complaint, defendants failed to

comply with this policy and, as a result, Doe Child suffered damages as more fully described

herein.

**b.    Hazing/Harassment/Intimidation/Bullying/Menacing
Complaint Procedures**

Building principals, supervisors and the superintendent have
responsibility for investigations concerning hazing, harassment,
intimidation, bullying, cyberbullying or menacing. The
investigator(s) shall be a neutral party having had no involvement
in the complaint presented. All complaints will be investigated in
accordance with the following procedures:

Step 1 Any hazing, harassment, intimidation, bullying or menacing
information (complaints, rumors, etc.) shall be presented to the
building principal or superintendent. Complaints against the
building principal shall be filed with the superintendent.
Complaints against the superintendent shall be filed with the Board
chair. All such information will be reduced to writing and will
include the specific nature of the offense and corresponding dates.

Step 2 The district official receiving the complaint shall promptly
investigate. Parents will be notified of the nature of any complaint
involving their student. The district official will arrange such
meetings as may be necessary with all concerned parties within
five working days after receipt of the information or complaint.
The parties will have an opportunity to submit evidence and a list
of witnesses. All findings related to the complaint will be reduced
to writing. The district official(s) conducting the investigation shall
notify the complainant and parents as appropriate, in writing, when
the investigation is concluded and a decision regarding disciplinary
action, as warranted, is determined.

A copy of the notification letter or the date and details of
notification to the complainant, together with any other

documentation related to the incident, including disciplinary action taken or recommended, shall be forwarded to the superintendent.

Step 3 If the complainant is not satisfied with the decision at Step 2, he/she may submit a written appeal to the superintendent or designee. Such appeal must be filed within 10 working days after receipt of the Step 2 decision. The superintendent or designee will arrange such meetings with the complainant and other affected parties as deemed necessary to discuss the appeal. The superintendent or designee shall provide a written decision to the complainant's appeal within 10 working days.

Step 4 If the complainant is not satisfied with the decision at Step 3, a written appeal may be filed with the Board. Such appeal must be filed within 10 working days after receipt of the Step 3 decision. The Board shall, within 20 working days, conduct a hearing at which time the complainant shall be given an opportunity to present the complaint. The Board shall provide a written decision to the complainant within 10 working days following completion of the hearing.

(*See*, Lake Oswego School District GBNA/JFCF-AR Policy, which is attached hereto as Exhibit 7, and incorporated fully herein.)  As described in more detail throughout this Complaint, defendants failed to comply with this policy and, as a result, Doe Child suffered damages as more fully described herein.

     **c.**     **Student Safety**

It is the responsibility of the district to provide a safe and secure environment for students while they are in school or under the supervision of school authorities. Not only does this responsibility include maintaining buildings, grounds and equipment to meet the full intent of Oregon Administrative Rules, but it also includes protecting students, insofar as is possible, from external influences on or about the campuses or in any other area where students are engaged in supervised, school-sponsored activities.

(*See*, Lake Oswego School District JHF Policy, which is attached hereto as Exhibit 8, and incorporated fully herein.)  As described in more detail throughout this Complaint, defendants

PAGE 11 – COMPLAINT

failed to comply with this policy and, as a result, Doe Child suffered damages as more fully

described herein.

**d.    Reporting of Suspected Abuse of a Child**

Child abuse by school employees is not tolerated. All district
employees are subject to this policy and the accompanying
administrative regulation. If a district employee is a suspected
abuser, reporting requirements remain the same.

* * *

Any district employee in the performance of official duties having
reasonable suspicion to believe that any child has suffered abuse or
that an adult has abused a child shall immediately report to County
Department of Human Services, or the Lake Oswego Police
Department, and the administrator. Information reported shall be
confidential.

(*See*, Lake Oswego School District JHFE Policy, which is attached hereto as Exhibit 9, and

incorporated fully herein.)  As described in more detail throughout this Complaint, defendants

failed to comply with this policy and, as a result, Doe Child suffered damages as more fully

described herein.

**e.    Student Rights and Responsibilities**

The Board has the responsibility to afford students the rights that
are theirs by virtue of guarantees offered under federal and state
constitutions and statutes. In connection with rights are
responsibilities that must be assumed by students.

Among these student rights and responsibilities are the following:

1. Civil rights – including the rights to equal educational
opportunity and freedom from discrimination; the responsibility
not to discriminate against others;

2. The right to attend free public schools; the responsibility to
attend school regularly and to observe school rules essential for
permitting others to learn at school;

PAGE 12 – COMPLAINT

3. The right to due process of law with respect to suspension, expulsion and decisions which the student believes injure his/her rights;

4. The right to free inquiry and expression; the responsibility to observe reasonable rules regarding these rights;

5. The right to privacy, which includes privacy with respect to the student's education records.

Students have the right to know the behavior standards expected of them as well as to know the consequences of misbehavior.

Students' rights and responsibilities, including standards of conduct, will be made available to students and their parents through information distributed annually.

(*See*, Lake Oswego School District JF/JFA Policy, which is attached hereto as Exhibit 10, and incorporated fully herein.)  As described in more detail throughout this Complaint, defendants failed to comply with this policy and, as a result, Doe Child suffered damages as more fully described herein.

## V.  LAKERIDGE HIGH SCHOOL POLICIES

23.    Lakeridge High School states its mission is "to provide a challenging academic curriculum that encourages creative, critical thinking in an environment based on mutual respect."  To that end, it has the following philosophies and policies:

a.    **Philosophy Of Education**

The philosophy of education of the Lake Oswego School District requires a balance between recognition of the dignity and individuality of students and the responsibility, which students bear, for their own conduct in relation to the rights of others. This section is designed to help students become more aware of the policies, which govern their conduct in school so that they will be better able to view school as an opportunity to acquire the skills, understandings, appreciations, and attitudes necessary to be a successful citizen. The intent of the regulations concerning students' rights, responsibilities, and limitations is to create an educational climate conducive to learning and to protect all members of the school community. The regulations are intended to

agree with local, state, and federal laws and are issued in response to Oregon Revised Statutes, 1971.

**b.**    **Equal Education Opportunity**

Equal educational opportunity and treatment shall be provided to all students. Within health and safety considerations no student legally enrolled in the district shall, on the basis of age, handicap, national origin, race, religion or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under an educational program or activity administered or authorized by the district school board. Anyone having a complaint in this area should direct that concern to the building principal. A student or parent who feels an action or decision is in violation of the Equal Educational Opportunity Policy may appeal that action or decision.

**c.**    **Responsibilities Of Students**

1. To attend school regularly.

2. To pursue an education by participating actively in the program of studies and activities offered.

3. To comply with the policies of the School District and to follow the lawful direction of the staff appointed by the Board of Directors.

4. To conduct themselves so as to avoid interference with or disruption of the dignity and rights of other individual students, the student group as a whole, or the school administration and staff as they fulfill their responsibilities and duties.

5. To conduct themselves in a manner that will not bring discredit upon themselves or upon other members of the school community.

**d.**    **Freedom of Expression**

Students are entitled to express their personal opinions and must accept responsibility for all such expression.

Students must respect the rights of others to express themselves. The use of obscenities and threats of harm to persons or property are prohibited.

Libelous or obscene expression and matter, which is potentially or actually disruptive of the educational process, are prohibited.

Students are entitled to hold meetings on school property providing they have received administrative approval and providing regulations expressed elsewhere are respected.

Materials sponsored, funded, printed, or published by the school are part of the school program and are, therefore, subject to approval by the administration or designated staff members.

School officials may review written or oral presentations to be given to students and may counsel on the probable effect of said presentations on the orderly operation of the school.

Students expressing their personal opinions in writing shall follow regulations expressed or implied in District Policy. The time and place for distribution of such material shall be subject to Lakeridge rules.

e.    **Harassment of / by Students**

It is the district's policy (Policy JBA) to ensure a working and learning environment that is free of harassment, bullying, intimidation, hazing, and discrimination for its students. In furtherance of this policy, the district does not condone and will not permit sexual harassment of any student. All students and employees are expected to abide by this policy. Any student who violates this policy will be subject to disciplinary action up to and including expulsion.

f.    **Definition of Harassment, Intimidation, Or Bullying**

1. Harassment, intimidation, or bullying means any act that substantially interferes with a student's educational benefits, opportunities, or performance, that takes place on or immediately adjacent to school grounds, at any school-sponsored activity, on school-provided transportation, or at any official school bus stop, and that has the effect of:

• Physically harming a student or damaging a student's property;

• Knowingly placing a student in reasonable fear of physical harm to the student or damage to the student's property; or

• Creating a hostile education environment.

2. Harassment includes, but is not limited to, any act which subjects an individual or group to unwanted, abusive behavior of a nonverbal, verbal, written or physical nature on the basis of age, race, religion, color, national origin, disability, marital status,

PAGE 15 – COMPLAINT

sexual orientation, physical characteristic, cultural background, socioeconomic status or geo-graphic location.

3. Bullying is a conscious, willful, and deliberate hostile activity intended to harm or induce fear through the threat of further aggression.

4. Intimidation includes, but is not limited to, any threat or act intended to tamper, substantially damage or interfere with another's property, cause substantial inconvenience, subject another to offensive physical contact or inflict serious physical injury on the basis of race, color, religion, national origin or sexual orientation age, race, religion, color, national origin, disability, marital status, sexual orientation, physical characteristic, cultural background, socioeconomic status or geographic location.

**g.      Definition of Sexual Harassment**

Sexual Harassment refers to behavior of a sexual nature, which is unwelcome and personally offensive to its recipient. Sexual harassment is a form of misconduct, which is demeaning to another person. Unwelcome sexual advances, requests for sexual favors and other verbal or physical conduct of a sexual nature constitute —sexual harassment when:

• Submission to such conduct is made explicitly or implicitly a condition of an individual's education;

• Submission to or rejection of such conduct is used as a basis for an education al decision affecting the student; or

• The harassment has the purpose or effect of unreasonably interfering with the student's educational performance or creating an environment, which is intimidating, hostile, or offensive to the student.

For example, conduct or expression of a sexual nature including but not limited to, indecent exposure, intentional exposure of private body parts, offensive sexual flirtations, foul language, sexually oriented propositions or comments about sexual exploits, jokes or remarks, obscene gestures, unwanted physical contact, or the display or publication of sexually explicit pictures, cartoons, or other materials that may be considered offensive to an-other employee or a student is prohibited.

52619-73496 *1130761_*1.DOC\mee\3/6/2015

h.    **Definition of Hazing**

Hazing includes, but is not limited to, any act that recklessly or intentionally endangers the mental health, physical health or safety of a student for the purpose of initiation or as a condition or precondition of attaining membership in, or affiliation with, any district-sponsored activity or grade level attainment, i.e., forced consumption of any drink, alcoholic beverage, drug or controlled sub-stance, forced exposure to the elements, forced prolonged exclusion from social contact, sleep deprivation or any other forced activity that could adversely affect the mental or physical health or safety of a student; requires, encourages, authorizes or permits another to be subject to wearing or carrying any obscene or physically burdensome article, assignment of pranks to be performed or other such activities intended to degrade or humiliate.

Conduct outside of school may result in disciplinary action from the school if there is a material and substantial disruption to the school environment.

i.    **Complaint Procedure**

1. Any student who feels that he or she has been harassed, intimidated, bullied, or sexually harassed, or hazed should immediately report the matter to his or her principal, assistant principal, counselor, or teacher. If that person is unavailable or the student does not wish to tell a school employee, the student may make a Report anonymously or inform the parents. Any act reported by a parent or anonymously will be investigated immediately.

2. Any administrator, supervisor, or manager who becomes aware of any possible act of harassment, intimidation, or bullying, or hazing should investigate and take necessary action to ensure that such conduct does not continue. Any employee who becomes aware of any possible act should report it to the principal or supervisor in charge. If the administrator or supervisor is part of the complaint, the report will be made to Human Resources.

• Retaliation against any person who reports an act of harassment, intimidation, or bullying, or hazing is prohibited.

• A person found to have falsely accused another of having committed an act of harassment, intimidation, or bullying, or hazing as a means of reprisal or retaliation or as a means of harassment, intimidation, or bullying will be disciplined.

• If appropriate, documentation will be submitted to the Superintendent, who may conduct a formal hearing. All complaints of harassment will be investigated in as discreet and confidential a fashion as possible. No person will be adversely affected in his/ her schooling with the district as a result of bringing good faith complaints of harassment. After a reasonable investigation and necessary procedures have been followed, appropriate discipline will be imposed up to and including expulsion.

j.      **Lakeridge Athletic Programs Policy**

We Believe That A Strong Athletic Program At The Secondary Level Complements, Reinforces And Extends Academic Programs By Offering Unique Opportunities For Students To Grow And Develop Intellectually, Physically, Emotionally, Socially And Ethically.  We also believe that in addition to providing a constructive arena for exercising the competitive spirit, athletics fosters a sense of both school and community pride.  Participants, school personnel, parents and the community at large all contribute to creating the conditions for the success of the athletic program.

We consider participation in athletics to be a privilege offered to an individual athlete, who then becomes accountable for fulfilling the related responsibilities.  Participation in competitive athletic endeavors is a valued life experience where both success and failure can make positive contributions to human growth in self-discipline, emotional maturity and self –respect.  Athletics should stress fairness in human relationships, commitment to doing one's best, respect for others and humility in victory and graciousness in defeat.  In addition, athletics should contribute to the development of lifelong health habits in exercise and nutrition.

The opportunity to participate in interscholastic sports programs shall be available to all students.  Comparable programs shall be available for men and women, funding shall be equitable and facilities and equipment shall be substantially equal.  Participants are entitled to skilled instruction, a safe competitive environment, respect as individuals and personal dignity.

While our school takes great pride in winning, it does not condone "winning at any cost" and discourages any and all pressures which compromise good sportsmanship and good mental health.  At all times athletic programs shall be conducted in such a way as to justify their inclusion in the district's educational program.

24.    As described in more detail throughout this Complaint, defendants failed to comply with this policy and, as a result, Doe Child suffered damages as more fully described herein.

## VI.  FACTUAL ALLEGATIONS

25.    As a 14 year old freshman, Doe Child began attending Lakeridge High School on September 2, 2014, the first day of Lakeridge High School's 2014-2015 academic school year. Doe Child, at all times material to this action, was a student at Lakeridge High School, and participated in extracurricular activities sponsored by Lakeridge High School including being a dancer on the Pacer Dance Team (the "Team").

26.    Prior to August 2010, Doe Child, her brother, and parents resided outside of Oregon.  In 2011, Doe Child's parents made the decision to move to Lake Oswego, Oregon, after carefully researching the schools in Oregon, including Lakeridge High School, and considering the promises made by various schools and school districts about the quality of education, the safety of the students, and the types of number of extracurricular activities, Jane and John Doe, decided to move to Lake Oswego, Oregon.

27.    In or about May 2014, Doe Child, still in junior high school, was 14 years old and was excited to audition for a spot on the 2014-2015 Team.  If she made the Team, Doe Child would be one of a few likely freshmen on the Team.  Prior to May 2014, Doe Child had been a member of the Junior Pace Dance Team at Lakeridge Junior High School for 2 years.

28.    Doe Child auditioned for and became a member of the Team.  Upon learning that she had made the Team, Doe Child was extremely excited and proud.  So were her parents.  Her parents knew that the long hours that Doe Child spent at dance classes together with her determination and diligence, were paying off.  The pride, as well as excitement, that Doe Child's parents felt for her was boundless.  Unfortunately, the excitement felt by all plaintiffs began to wane as a result of events that eventually led to Doe Child's assault, harassment, bullying,

cyberbullying, physical injuries, degradation, emotional distress and constructive expulsion from the Team.

29.    The Team began regular practice in June 2014.

30.    As a member of the Team, Doe Child was required to attend several events, apart from regular practices.  The first was a "team bonding trip" to Gearhart, Oregon, on June 28-29, 2014.  The second was an "initiation" on August 9-10, 2014, in Lake Oswego, Oregon.  The third was a "mandatory boot camp" in Sunriver, Oregon, from August 24-28, 2014.

31.    As a member of the Team, Doe Child attended each of the three events described in paragraph 30 above.  Schiele and Lamont knew and approved of these three events.  Beck, who became superintendent for the District on July 1, 2014, knew or should have known of the initiation and boot camp events.

32.    Lamont, Schiele, Nordlum, Ashley, and Young, knew and approved of the events described in paragraph 30 above.

**a.    Gearhart, Oregon Bonding Weekend**

33.    During the team bonding trip to Gearhart, Oregon, with the approval and knowledge of Nordlum and Ashley, Doe Child was forced to listen to Team members who, during a sharing experience involving all of the Team members, spoke of highly offensive sexual activities, using sexually explicit language (too crude to include here).  Nordlum was aware that such talk occurred at prior team bonding events and assured Jane and John Doe that it would not occur.  Despite that assurance, Nordlum encouraged and approved the humiliating conversations.

34.    Also during the team bonding trip to Gearhart, Oregon, Nordlum and Ashley returned to Portland, Oregon, early and unscheduled.  Doe Child was left stranded in a neighboring city, Seaside, Oregon, without a ride home.  Oddly, however, Nordlum abandoned Doe Child in Seaside, Oregon, thinking Jane and John Doe were 2 hours away in Lincoln City, Oregon.

b.    **Initiation**

35.    During the August 9, 2014, initiation event, the senior Team members arranged activities intended to humiliate, endanger, harass, assault, and batter the rest of the Team members.

36.    On August 9, 2014, Doe Child's cellular phone was taken from her. She was placed in a humiliating costume, blindfolded and put into a car, where she sat on the floor (without any restraint) while she was driven to a location not disclosed to Doe Child.

37.    Upon arriving in downtown Lake Oswego, the senior Team members required the other team members to pull little pieces of paper out of a hat. On the pieces of paper were listed activities that were intended to embarrass the Team members and harass the citizens in downtown Lake Oswego, Oregon. The activities included, but were not limited to, dancing on tables, kissing strange men, and yelling obscenities at restaurant guests. Lake Oswego, Oregon police were called. On information and belief, a police report was filed by a downtown restaurant about Team members' inappropriate sexual and vulgar conduct, and disturbing the peace.

38.    Around 9:00 p.m., Doe Child was eventually taken to a field at Lakeridge High School where approximately 25 – 30 male and female high school students were waiting to terrorize Doe Child and the other Team members. The senior high school Team members had invited the other students to attend the initiation and were encouraged to harass and humiliate Doe Child and other Team members. It was obvious from the odors at the field, that some of the invited students had been drinking and smoking marijuana. Some of the students shouted sexually explicit instructions and profanity (too crude to include here) at the blindfolded Team members.

39.    Upon arriving at Lakeridge High School, Doe Child was removed from the vehicle she was riding in. Still blindfolded, she and other Team members were put in a line and

the other students threw water balloons at Doe Child and others.  On information and belief, the water balloons contained something like rice because when the balloons hit Doe Child, it was painful.  The other students also squirt water guns at Doe Child and other Team members.  Doe Child was hit in the face, body, and chest with water balloons. Doe Child was hit so hard in the chest she was bruised.

40.     When there were no more water balloons and the water guns were empty, Doe Child was allowed to remove her blindfold and told to remove her costume.  The senior Team members had previously told Doe Child to wear a bikini under her costume so now Doe Child and other Team members were standing in front of the crowd in their bikinis.  A garbage bag was placed over Doe Child (her head was exposed) and she and other Team members were required to roll around on a tarp covered in maple syrup and oatmeal wrestling with one another. The on looking students threw feathers on Doe Child and other Team members.  Male students pushed and grabbed Doe Child and pushed her into other Team members.   Doe Child and other Team members were told and were forced to dance with and for the male students.

41.     Following the water and tarp activities, Doe Child was  placed back into a vehicle, blind folded, and was again forced to sit on the floor with no restraint.  Around 11:00 p.m., Doe Child and other Team members arrived at Willamette Park where Doe Child was forced to walk into the cold Willamette River in her bikini.  Doe Child and the other Team members had to answer questions posed to them by the senior Team members.  Doe Child and other Team members had to take steps into the river if they answered a question incorrectly.  Nordlum provided the senior Team members with the questions.  Doe Child was not wearing shoes and was not provided with any safety jacket just in case she fell.  Doe Child and the other Team members were only allowed to come back to shore after they were so deep in the water that they could not keep going in.  After they came out of the water, Doe Child and other Team members were told that they had to run after the cars and catch them if they wanted a ride.  Doe Child was

PAGE 22 – COMPLAINT

in her bare feet and her feet ended up swollen and red after all of the various events, including running through the parking lot chasing a car for a ride.

42.     Although she was not present for the initiation, Schiele, Nordlum. Ashley, and Young knew or should have known about the activities in advance of the evening but did nothing.  Indeed, the District, Lamont, Schiele, and Nordlum are aware the similar traditional initiation activities have happened in the District and at Lakeridge High School for years and have not done anything to prevent them from continuing.

43.     At no point during the initiation was Doe Child given the opportunity to speak to a parent or coach about what was happening to her.  Doe Child was not given the choice or opportunity to walk away for refusing to participate.  She was blindfolded, harassed, assaulted, physically harmed, bullied, intimidated, afraid, humiliated, abused, and sexually harassed all with the knowledge and consent of the District, Schiele, Nordlum, and Ashley.

44.     Doe Child did not ask to have her dignity taken from her on August 9, 2014, but indeed it was.

45.     On August 11, 2014, Doe Child spoke to the Team's technique coach about the activities of August 9, 2014.  Doe Child specifically indicated that she was talking to the technique coach about the events not to hurt the Team but because she did not want to go through anything like August 9 again.  Recognizing her duty to report the August 9, 2014, events as hazing, the technique coach reported the hazing to Nordlum and Lamont the very same day. Doe Child's name was only revealed to Lamont at that time so as not to provide anyone at Lakeridge High School with an opportunity to retaliate against Doe Child.  Nordlum was not told Doe Child's name and she was very upset and angry about this.

   c.     **Sunriver, Oregon Boot Camp**

46.     During the boot camp at Sunriver, Oregon, six girls were assigned to sleep in each room.  On the first night of the boot camp, Nordlum used duct tape to lock the girls in their

rooms for the entire night.  Nordlum claims it was so she could be sure the girls did not sneak out.

47.    Also during boot camp, Nordlum and Ashley told the Team members to close their eyes and she took them on a "trust" walk in the dark.  Eventually, the girls were seated in a circle.  Nordlum and Ashley requested that the Team member share a dramatic story from their lives.  Nordlum and Ashley spoke of events too personal to mention here but which were of a very sensitive nature and inappropriate for a coach without any special training to discuss with high school kids.  The Team members also spoke of highly sensitive issues (also too personal to mention here) without the presence and benefit of a counselor to help the Team members deal with and process what they were sharing and hearing.  The demand for such sensitive stories was a violation of Doe Child's privacy.

48.    Nordlum and Ashley learned information from the stories described in paragraph 46 above that required certain mandatory reports under Oregon law, District policy, and Lake Ridge High School policy. Neither of them took any action to report or address the information learned.

49.    Also during boot camp at Sunriver, Oregon, Nordlum and Ashley asked the Team members to meet with them privately by school grade level so they could discuss the August 9, 2014, events. It was clear that Nordlum and Ashley were arranging these meetings to try to figure out who spoke to Lamont about August 9, 2014.

50.    When Doe Child, together with the seven other freshmen, met with Nordlum and Ashley, the group was asked about their thoughts on the August 9, 2014, initiation.  Nordlum further pressed Doe Child for what, if anything, she had to say about initiation and if anything had bothered her about the night.  Nordlum, in violation of Doe Child's freedom of speech, told Doe Child that this was her last opportunity to discuss initiation because, thereafter, she was to

PAGE 24 – COMPLAINT

keep quiet.  Prior to Sunriver, Oregon, Nordlum had previously expressed to the Team members that there was to be no discussion about the August 9, 2014, events.

51.    During her meeting with Ashley, Nordlum, and the other freshmen Team members, Doe Child was in fear and intimidated by Nordlum and Ashley, as well as afraid to say anything to upset the other Team members.  Consequently, Doe Child had no choice but to say "no."  Nordlum asked Doe Child specifically again if she had any issues or problems with initiation and she repeated "no."  Doe Child was eventually excused from the meeting with Nordlum and Ashley.  Doe Child called Jane and John Doe.  Doe Child was now in tears because she believed that, based on Nordlum's questioning, everyone knew she had talked to the school administration about the initiation.  It was apparent Nordlum and Ashley were targeting Doe Child for discussing initiation.

52.    On or about August 28, 2014, while she was in Sunriver, Oregon, Nordlum communicated with the technique coach via text.  Nordlum told the technique coach that she believed there was no hazing on August 9, 2014, and the 14 year old girl that came forward was a liar.  Nordlum blamed the unknown student and her mother for spreading rumors and exaggerating what happened.  Nordlum demanded to know Doe Child's name.  After the technique coach refused to share the name with her, and directed Nordlum to Lamont, Nordlum threatened the technique coach, in a string of long texts, with having her removed from her position if she did not reveal Child Doe's identity. The technique coach quit.

53.    On August 28, 2014, apparently Nordlum now believed Doe Child spoke to school officials about the August 9, 2014 activities.  Nordlum sent an email to Jane Doe accusing Doe Child of lying about the initiation events and stating:

> I need to address something that has caused a lot of havoc that I
> think you may know something about. The details that we hear you
> are saying happened at initiation are not true and I'm pretty upset
> that for one you would believe I would allow something like that to
> happen and for two that you would go to everyone and talk about

it. It has made me feel very upset and I don't understand why you would spread something like this about my team without coming directly to me with your concern. That is one thing I ask of all of my parents.

\* \* \*

*I hope I don't hear anything more about this night from anyone else but you, but if I do it could result in some sort of suspension for [Doe Child].  It isn't fair to my team and I won't have it.*

### d.    Retaliation, Bullying, Cyberbullying

54.    After the Sunriver, Oregon trip, Doe Child was perceived by Team members as a snitch.  Many Team members tweeted and posted negatively about Doe Child and bullied and harassed her at school.  Doe Child was harassed during practice by Nordlum and some of the Team members.

55.    On September 4, 2014, Nordlum took Doe Child off of the "jazz competition team" without any warning.

56.    On September 19, 2014, without any warning whatsoever and immediately prior to the start of the homecoming football game, and even though Doe Child was wearing her Team costume, Nordlum advised Doe Child that she was not allowed to participate.  Instead, Nordlum demanded that Doe Child stand on the side while everyone else on the Team participated.

57.    On September 22, 2014, as a result of the treatment by Team members and Nordlum, Doe Child was forced to leave the Team.  Nordlum never asked Doe Child why she was leaving and she never asked how she was doing.  Given Doe Child's love of dance, Doe Child was forced to take dance classes at a private dance studio.  Doe Child would have preferred to dance on the Team but had suffered such abuse, ridicule, bullying, and cyberbullying as a result of her decision to discuss the August 9, 2014 events, participation on the Team would be impossible.

58.     Young posted comments about Jane Doe (who is of Brazilian descent) on Facebook (attached hereto as Exhibit 11 and incorporated fully herein) and sent harassing texts to her.  (*See*, Exhibit 12, attached hereto and fully incorporated herein.)  Young has publically called Jane and John Doe and Doe Child liars.

### e.     District Investigation, Response, and Duties

59.     The District requested that the Hungerford Law Firm conduct an investigation of the various events described herein.  (A copy of the summary report is attached hereto as Exhibit 13 and fully incorporated herein.)  Despite a request for the full report, plaintiffs have been denied the full report.

60.     The District, Beck, Schiele, Lamont, Nordlum, and Ashley have done nothing to address the misconduct of the senior Team members and have failed to provide a safe school environment for Doe Child.  Indeed, in January 2015, all of the senior Team members received gifts from the school instead of being reprimanded in any way.  Shiele and Lamont have shown nothing but constant support of and for the Team and Nordlum through Facebook postings and photos, as if the senior girls and the coaches had done no wrong.

61.     All acts and practices of Lakeridge High School, as alleged within this Complaint, were acts, conduct, errors and omissions of the District through its agents, employees, trainees, volunteers, and assigned parents, all or some of which deprived Doe Child of rights, privileges and immunities under color of law as that term is defined by 42 U.S.C. § 1983.

62.     All acts and practices of the individual defendants, as alleged within the confines of this Complaint, were acts, conduct, errors and omissions of the District through its agents and employees, all or some of which deprived plaintiffs of rights, privileges and immunities under color of law as that term is defined by 42 U.S.C. § 1983.

63.     From at least between the dates of June 2014, through present and beyond, all defendants have embarked on a course of conduct wherein its actions were deliberately

indifferent to ongoing and multiple incidences of fellow student hazing, harassment, bullying, and cyberbullying directed to and inflicted upon Doe Child.

64.     The defendants knew or should have known that the ongoing and multiple incidences of fellow student hazing, harassment, bullying, and cyberbullying were occurring yet did nothing to control and/or stop such illegal conduct.

65.     From at least between the dates of June 2014, through present and beyond, the defendants were deliberately indifferent to the complaints being registered to one or more defendants by Doe Child and Jane Doe on behalf of her herself and her Doe Child, with respect to the failure of Lakeridge High School and the District to provide protection and an education with respect to certain activities and conduct which threatened both the physical and emotional well-being of Doe Child and the educational climate conducive to learning that was to have been provided to Doe Child as a student at Lakeridge High School.

66.     From at least between the dates of June 2014, through present and beyond, the defendants embarked on a course of conduct wherein they were deliberately indifferent to complaints being registered to one or more of said defendants from sources, including but not limited to complaints from plaintiffs John and Jane Doe, concerning harassment, hazing, retaliation, and other illegal conduct, which was being directed toward Doe Child while she was on the Team and a student attending Lakeridge High School.

67.     The District, Beck, Schiele, and Lamont ignored an obvious need to train and supervise its employees, agents, volunteers, and students on addressing peer harassment, bullying, and cyberbullying and the lack of such training and supervision caused plaintiffs to suffer injuries described in further detail below and throughout this Complaint.

68.     The harassment, hazing, bullying, cyberbullying, retaliation, and other illegal conduct was being directed toward Doe Child from fellow Team member and from defendants.

52619-73496 *1130761_1*.DOC\mee/3/6/2015

69.    The defendants, either had direct knowledge that such harassment, hazing, bullying, cyberbullying, retaliation, and illegal conduct was occurring or should have known that it was occurring and, despite having such knowledge and information, failed in every major respect to prevent such harassment, hazing, bullying, cyberbullying, retaliation, and illegal conduct from occurring.

70.    The hazing, harassment, bullying, cyberbullying, retaliation, and illegal conduct was so severe, pervasive, and objectively offensive that it deprived Doe Child of access to the educational opportunities, extra-curricular activities and/or benefits afforded by the District and to which Doe Child was entitled as a student attending high school within the State of Oregon and within the United States of America.

71.    The defendants, at all times material to this Complaint, had the duty and authority to take remedial action to eliminate the hazing, harassment, bullying, cyberbullying, retaliation and other illegal conduct engaged in and directed toward Doe Child by students, agents, employees, and volunteers and were deliberately indifferent to providing requisite protection to Doe Child and in affording her all rights incident to attending high school to which she was entitled as a student attending high school within the State of Oregon and within the United States of America.

72.    The District, Beck, Schiele, and Lamont exercised substantial control over the students, Young, Nordlum and Ashley who engaged in multiple episodes of hazing, child abuse, harassment, sexual harassment, imprisonment, bullying, cyberbullying, seizure, retaliation, and other illegal acts and, in addition, exercised substantial control within the parameters and area within which the illegal activities, as alleged, occurred.

73.    Misconduct forming the basis of this lawsuit, as alleged, occurred during instances where the students were under direct supervision of the defendants either at school sponsored functions and/or on property under the management and control of defendants.

74.    The defendants at all times material, retained substantial control over the context and environment in which the hazing, child abuse, harassment, sexual harassment, bullying, cyberbullying, seizure, retaliation, and other illegal acts occurred and, additionally, exercised significant control by which it could have and should have prevented the hazing, child abuse, harassment, sexual harassment, imprisonment, bullying, cyberbullying, seizure, retaliation, and illegal acts.

75.    The District, Beck, Schiele, and Lamont at all times material, hereto, had disciplinary authority and obligations over students attending Lakeridge High School, employment authority and obligations over Nordlum and Ashley and had the authority to prohibit Young from serving as a volunteer for the District.

76.    The defendants, all times material, hereto, failed to prevent such hazing, child abuse, harassment, sexual harassment, bullying, cyberbullying, seizure, retaliation, and other illegal acts and conduct from occurring.

77.    The defendants, acting individually and through agents, employees, volunteers, and participating parents, had a duty to protect the rights of Doe Child and her family.

78.    Furthermore, said defendants knew or should have known that policy guidelines clearly provide that hazing, child abuse, harassment, sexual harassment, bullying, cyberbullying, seizure, retaliation, and other illegal acts fall within the scope of the laws of the State of Oregon and the United States Constitution.  Each act that forms the basis of this Complaint was carried out individually and during the scope and course of employment, authorization and/or agency by said defendants and, therefore, said acts are imputed to defendants.  Alternatively, conduct of defendants may have been outside defendants' scope of the responsibilities and may have been willful and/or wanton.

79.     Unless otherwise noted, at all times relevant to this action, defendants were acting in a ministerial, operational, and non-discretionary capacity and/or performing ministerial, operational, and non-discretionary functions or duties.

80.     The District, Beck Schiele, Lamont, Nordlum, and Ashley owed Doe Child a duty of care to ensure the safety and well-being of Doe Child and all students. This overall duty of care encompassed a duty to supervise the conduct of all students, to enforce rules and regulations necessary for the protection of students, and to take appropriate measures to protect students from the misconduct of other students. The District, Beck Schiele, Lamont, Nordlum, and Ashley had a duty to exercise due care to protect Doe Child from harassment and other misconduct by students and by other defendants. Encompassed within the District, Beck Schiele, Lamont, Nordlum, and Ashley's duty to protect Doe Child and other students was a duty to exercise due care in investigating plaintiffs' complaints of hazing, harassment, child abuse, bullying, cyberbullying, and other illegal acts, to take reasonable precautions to protect Doe Child from hazing, harassment, child abuse, bullying, cyberbullying, and other illegal acts that reasonably could be anticipated; to make police reports of the crimes; to take prompt and appropriate action to protect Doe Child from further harassment and fear; and to remove dangerous students from the school, if necessary.  The District, Beck Schiele, Lamont, Nordlum, and Ashley owed every duty alleged in this paragraph to plaintiffs.

## VII.    FIRST CLAIM FOR RELIEF

### (VIOLATION OF 42 U.S.C. § 1983 – Equal Protection Based on Gender)

### (Against All Defendants)

81.     Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

PAGE 31 – COMPLAINT

82.    The above-described conduct by defendants violated the right of Doe Child not to be deprived of equal protection of the laws on the basis of gender under the Fourteenth Amendment to the United States Constitution (42 U.S.C. § 1983).

83.    As a direct and proximate result of the violation of 42 U.S.C. § 1983, Doe Child has been subjected to physical injury, pain and suffering, severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

84.    As a direct and proximate result of the violation of 42 U.S.C. § 1983, Doe Child has incurred and will incur in the future medical expenses and psychological expenses and other special and consequential damages, all in amounts to be proven at the time of trial.  She will also incur costs to continue to take dance lessons because she was forced off of the school dance team.

## VIII.  SECOND CLAIM FOR RELIEF

### (VIOLATION OF 42 U.S.C. § 1983)

#### (Against All Defendants)

85.    Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

86.    The conduct of defendants, acting under "color of law" toward plaintiffs, violated fundamental rights afforded to them as guaranteed by the laws of the United States government and the State of Oregon, which conduct deprived the plaintiffs of rights, privileges and immunities, all in violation of the Civil Rights Act codified as 42 U.S.C. § 1983.

87.    As a direct and proximate result of the violation of 42 U.S.C. § 1983, Doe Child has been subjected to physical injury, pain and suffering, severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

88.     As a direct and proximate result of the violation of 42 U.S.C. § 1983, Doe Child has incurred and will incur in the future medical expenses and psychological expenses and other special and consequential damages, all in amounts to be proven at the time of trial.  She will also incur costs to continue to take dance lessons because she was forced off of the school dance team.

89.     As a direct and proximate result of the violation of 42 U.S.C. § 1983, Jane and John Doe have been subjected to severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

## IX.  THIRD CLAIM FOR RELIEF
## (VIOLATION OF 42 U.S.C. § 1983)
### (Against District and Nordlum)

90.     Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

91.     The above-described conduct by the District and Nordlum violated the right of Doe Child to be free from retaliatory treatment based upon the exercise of her freedom of speech under the First Amendment to the United States Constitution.

92.     As a direct and proximate result of the violation of 42 U.S.C. § 1983, Doe Child has been subjected to physical injury, pain and suffering, severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

93.     As a direct and proximate result of the violation of 42 U.S.C. § 1983, Doe Child has incurred and will incur in the future medical expenses and psychological expenses and other special and consequential damages, all in amounts to be proven at the time of trial.  She will also

52619-73496 *1130761*_1.DOC\mee/3/6/2015

incur costs to continue to take dance lessons because she was forced off of the school dance team.

## X.  FOURTH CLAIM FOR RELIEF

### (HAZING CLAIM)

### (Against All Defendants)

94.      Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

95.      The Team is a student organization, which is allowed to be at Lakeridge High School as a result of the relationship the Team has with Lakeridge High School.

96.      Although try-outs for membership on the Team were held in May, 2014, the Team has an initiation ceremony after which the potential new Team members are officially invited to join the Team.

97.      Defendants subjected Doe Child and other members of the Team, to unsafe wrestling, physical brutality, exposure to the elements, confinement, and other similar activities that subjected Doe Child to an unreasonable risk of harm and adversely affected the physical health and safety of Doe Child.

98.      Neither Doe Child nor her parents consented to the activities described in this Complaint.

99.      As a direct and proximate result of the breach of hazing, Doe Child has been subjected to physical injury, pain and suffering, severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

100.      As a direct and proximate result of Hazing, Doe Child has incurred and will incur in the future medical expenses and psychological expenses and other special and consequential

damages, in amounts to be proven at the time of trial.  She will also incur costs to continue to take dance lessons because she is unable to do that at school.

101.    As a direct and proximate result of the Hazing, Jane and John Doe have been subjected to severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

## XI.  FIFTH CLAIM FOR RELIEF

### (NEGLIGENT SUPERVISION AND HAZING)

### (Against All Defendants)

102.    Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

103.    Defendants owed a duty to the plaintiffs, or any of them, to appropriately monitor and supervise the students in attendance at the school and during school activities.

104.    Included within the concept of supervision would be a recognition that any hazing or harassing event might be taking place and any participation by an authorized representative of the District within the hazing process, itself, is totally contrary to the concept of supervision.

105.    Defendants breached this duty of care owed to plaintiffs.

106.    As a direct and proximate result of the breach of the duty of care of one or more of the defendants, Doe Child has been subjected to a personal injury resulting in physical pain and suffering, severe emotional distress, mental pain and suffering, embarrassment, anxiety, and loss of enjoyment of life in amounts to be determined at the time of trial.

107.    As a direct and proximate result of the breach of the duty of care of one or more of the defendants, Doe Child has incurred and will incur in the future medical expenses and other special and consequential damages, all in amounts to be proven at the time of trial.  Doe Child

will also incur costs to continue to take dance lessons because she was forced off of the school dance team.

108.    As a direct and proximate result of the breach of the duty of care of one or more of the defendants, Jane and John Doe have been subjected to physical pain and suffering, severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

## XII.  SIXTH CLAIM FOR RELIEF

## (NEGLIGENCE IN SUPERVISION, HIRING, AND/OR TRAINING)

### (Against District, Beck, Schiele, and Lamont)

109.    Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

110.    The District, Beck, Schiele and Lamont owed a duty to plaintiffs to hire, train and supervise its agents, representatives, employees, and/or volunteers in a manner conducive to the health, safety, and well-being, of the plaintiffs.

111.    The District, Beck, Schiele and Lamont breached one or more of these duties.

112.    As a direct and proximate result of the breach of the duty of care of District, Beck, Schiele and Lamont, Doe Child has been subjected to physical injury, pain and suffering, severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, loss of enjoyment of life in amounts to be proven at the time of trial.

113.    As a direct and proximate result of the breach of the duty of care of one or more of the defendants, Doe Child has incurred and will incur in the future medical expenses and psychological expenses and other special and consequential damages, all in amounts to be

proven at the time of trial.  She will also incur costs to continue to take dance lessons because she was forced off of the school dance team.

114.    As a direct and proximate result of the breach of the duty of care of one or more of the defendants, Jane and John Doe have been subjected to severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, loss of enjoyment of life in amounts to be proven at the time of trial.

## XIII.  SEVENTH CLAIM FOR RELIEF

### (NEGLIGENCE IN RESTRAINING STUDENT HARASSMENT)

### (Against District, Beck, Schiele, and Lamont)

115.    Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

116.    The District, Beck, Schiele and Lamont had a duty to prevent its students from harassing Doe Child.

117.    The District, Beck, Schiele and Lamont failed to appropriately caution and conduct safeguards to insure that its student body would not harass, bully, or cyber bully Doe Child and to take appropriate action to sanction such behavior.  The District, Beck, Schiele and Lamont failed to sanction it students who made public statements both at school and on the internet, with the intent to harass, bully, and cyber bully plaintiffs.

118.    The District, Beck, Schiele and Lamont owed a duty to plaintiffs to control its student body in such a manner that it not harass nor single out any student or parent through derisive, mocking, harassing and/or contemptuous statements.

119.    The District, Beck, Schiele and Lamont breached one or more of these duties.

120.    As a direct and proximate result of the breach of one or more of such duties, Doe Child has been subjected to physical injury, pain and suffering, severe emotional distress,

frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, loss of enjoyment of life in amounts to be proven at the time of trial.

121.    As a direct and proximate result of the breach of the duty of care of one or more of the defendants, Doe Child has incurred and will incur in the future medical expenses and psychological expenses and other special and consequential damages, all in amounts to be proven at the time of trial.  She will also incur costs to continue to take dance lessons because she was forced off of the school dance team.

122.    As a direct and proximate result of the breach of the duty of care of one or more of the defendants, Jane and John Doe have been subjected to severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, loss of enjoyment of life in amounts to be proven at the time of trial.

## XIV.  EIGHTH CLAIM FOR RELIEF

## (NEGLIGENCE IN RESTRAINING ASSAULT AND BATTERY)

### (Against District, Beck, Schiele, and Lamont)

123.    Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

124.    The District, Beck, Schiele and Lamont had a duty to prevent its students from assaulting and battering Doe Child.

125.    The District, Beck, Schiele and Lamont failed to appropriately caution and conduct safeguards to insure that its student body would not assault or batter Doe Child and to take appropriate action to sanction such behavior.  Defendants failed to sanction it students who assaulted and battered Doe Child.

126.    The District, Beck, Schiele and Lamont owed a duty to plaintiffs to control its student body in such a manner that it not assault or batter any student.

127.    The District, Beck, Schiele and Lamont breached one or more of these duties.

128.    As a direct and proximate result of the breach of one or more of such duties, Doe Child has been subjected to physical injury, pain and suffering, severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

129.    As a direct and proximate result of the breach of the duty of care of one or more of the defendants, Doe Child has incurred and will incur in the future medical expenses and psychological expenses and other special and consequential damages, all in amounts to be proven at the time of trial.  She will also incur costs to continue to take dance lessons because she was forced off of the school dance team.

130.    As a direct and proximate result of the breach of the duty of care of one or more of the defendants, Jane and John Doe have been subjected to severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

## XV.  NINTH CLAIM FOR RELIEF

### (NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS)

#### (Against All Defendants)

131.    Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

132.    One or more of the defendants, including the District, owed a duty to plaintiffs to be vigilant in preventing hazing, assaults, harassment and/or other illegal acts directed toward and inflicted upon Doe Child as a student attending Lakeridge High School.

133.    One or more of the defendants breached the alleged duties owed.

134.    One or more of the defendants, including the District, owed a duty to plaintiffs to protect plaintiffs and to protect Doe Child as a student and to provide her with security within the context of a student attending high school commensurate with standards imposed on high schools within the State of Oregon and the United States of America.

135.    One or more of the defendants breached the duties owed.

136.    As a direct and proximate result of the breach of the duty of care imposed in one or more of the alleged areas, by one or more of the defendants, Doe Child has been subjected to physical injury, pain and suffering, severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

137.    As a direct and proximate result of the breach of the duty of care of one or more of the defendants, Doe Child has incurred and will incur in the future medical expenses and psychological expenses and other special and consequential damages, all in amounts to be proven at the time of trial.  She will also incur costs to continue to take dance lessons because she was forced off of the school dance team.

138.    As a direct and proximate result of the breach of the duty of care of one or more of the defendants, Jane and John Doe have been subjected to severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

52619-73496 *1130761_1*.DOC\mee/3/6/2015

## XVI.  TENTH CLAIM FOR RELIEF

## (INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS)

### (Against All Defendants)

139.     Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

140.     Defendants owed a duty to plaintiffs to be vigilant in preventing hazing, assaults, harassment and/or other illegal acts directed toward and inflicted upon Doe Child as a student attending Lakeridge High School and, in accordance, therewith, to refrain from inflicting emotional distress upon the plaintiffs.

141.     One or more of the defendants breached the duties owed.

142.     As a direct and proximate result of the breach of the duty of care of one or more of the defendants, plaintiffs have been subjected to a personal injury resulting in physical pain and suffering, severe emotional distress, mental pain and suffering, embarrassment, anxiety, and loss of enjoyment of life in amounts to be determined at the time of trial.

## XVII.  ELEVENTH CLAIM FOR RELIEF

## (FALSE IMPRISONMENT)

### (Against Nordlum)

143.     Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

144.     Doe Child was falsely imprisoned by defendants when Nordlum used duct tape to lock Doe Child in her room during the Team boot camp in Sunriver.

145.     As a direct and proximate result of the false imprisonment, Doe Child suffered mental pain and suffering and anxiety in an amount to be determined at trial.

/////

/////

52619-73496 *1130761_1.DOC\mee/3/6/2015*

## XVIII.  TWELFTH CLAIM FOR RELIEF

## (CHILD ABUSE)

### (Against All Defendants)

146.    Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

147.    The conduct of defendants described herein equates to child abuse under ORS 419B.005.

148.    As a direct and proximate result of the child abuse, Doe Child has been subjected to physical injury, pain and suffering, severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

149.    As a direct and proximate result of the child abuse, Doe Child has incurred and will incur in the future medical expenses and psychological expenses and other special and consequential damages, in amounts to be proven at the time of trial.  She will also incur costs to continue to take dance lessons because she is unable to do that at school.

150.    As a direct and proximate result of the child abuse, Jane and John Doe have been subjected to severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

## XIX.  THIRTEENTH CLAIM FOR RELIEF

## (FAILURE TO REPORT CHILD ABUSE)

### (Against All Defendants)

151.    Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

152.   Doe Child was subjected to abuse and negligent treatment as defined in ORS 419B.005.

153.   Defendants knew the Doe Child was subjected to abuse as defined in ORS 419B.005.

154.   Pursuant to ORS 419B.010, defendants had a duty to report the child abuse described in this lawsuit but each and everyone failed to do so.  Had defendants reported the abuse, Doe Child's physical injury, pain and suffering, severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life would have been drastically reduced.

155.   As a direct result of defendants' failure to report the child abuse suffered by Doe Child, Doe Child continued to suffer child abuse and physical injury, pain and suffering, emotional distress, mental pain and suffering, embarrassment, anxiety, and loss of enjoyment of life would have been drastically reduced.

156.   Plaintiffs are entitled to recover damages in an amount equal to the amount of damages defendants could have prevented if they had reported the child abuse.

## XX.  FOURTEENTH CLAIM FOR RELIEF

### (RETALIATION CLAIM)

### (Against All Defendants)

157.   Plaintiffs reallege and incorporate by reference each paragraph, heretofore alleged, within the body of this Complaint as though fully, herein and/or hereinafter, set forth.

158.   Plaintiffs were victims of harassment, intimidation, bullying and cyberbullying as a result of reporting the August 19, 2014, activities to defendants.  Doe Child was threatened with suspension from the Team; she was prevented from participating in a Team event; she was cut from a specialty group on the Team; and she was ultimately forced to leave the Team due to the bullying and harassment of Nordlum.

159.    Defendants engaged in repeated retaliation against plaintiffs in violation of ORS 339.362 and they did nothing to stop others from engaging in retaliation against plaintiffs.

160.    The conduct of defendants in violating ORS 339.362 may have been outside defendants' scope of the responsibilities and may have been willful and/or wanton.

161.    As a direct and proximate result of the retaliation, Doe Child has been subjected to physical injury, pain and suffering, severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

162.    As a direct and proximate result of the retaliation, Doe Child has incurred and will incur in the future medical expenses and psychological expenses and other special and consequential damages, in amounts to be proven at the time of trial.  She will also incur costs to continue to take dance lessons because she is unable to do that at school.

163.    As a direct and proximate result of the retaliation, Jane and John Doe have been subjected to severe emotional distress, frustration, apprehension, trouble, uneasiness, concern, anxiety, worry, fright, panic, alarm, fear, tension, pressure, strain, stress, and loss of enjoyment of life in amounts to be proven at the time of trial.

## XXI.  PRAYER FOR RELIEF

WHEREFORE, plaintiffs pray for a judgment in their favor and against defendants as follows:

1.    For an Order declaring that the defendants have shown a reckless and outrageous indifference to a highly unreasonable risk of harm as a result of the conduct described in this Complaint and have acted with a conscious indifference to the health, safety, and welfare of others as a result of the same;

2.    For an Order declaring that the District, Beck, and Schiele, have acted with willful and wanton disregard by failing to properly train the District and high school teachers, coaches,

and staff how to properly supervise and discipline students and staff who engage in hazing, child abuse, bullying, cyberbullying, and retaliation;

3.      For an Order declaring that Nordlum, Ashley, and Young, acted with willful and wanton disregard by consciously disregarding known acts of hazing;

4.      For a permanent injunction restraining and enjoining the District, Lake Ridge High School, Beck, Schiele, Lamont, Nordlum, and Ashley, from failing to adequately protect Doe Child, and other similarly situated students, from hazing, retaliation, child abuse, bullying, and cyberbullying;

5.      For a permanent injunction ordering the District to stop engaging in unlawful acts, and to develop strict policies and procedures for ending any such unlawful acts and the hostile, retaliatory and unsafe environment, including but not limited to the following:

a.      Require the District to implement mandatory and effective training programs with measurable results for District faculty, staff, coaches, volunteers and students on issues relating to hazing, bullying, cyber-bullying, and retaliation together with and methods to intervene to stop students and volunteers from hazing/bullying other students and their families;

b.      Require the District to adopt policies with specific guidelines for instructing teachers, coaches, staff, volunteers and other District employees about how to address observed and unobserved acts of hazing, harassment, child abuse, bullying, cyberbullying and retaliation;

c.      Require the District to conduct assemblies for all students in the District addressing issues of hazing, bullying, and cyber-bullying, wherein students are instructed about laws prohibiting such conduct, including but not limited hazing, harassment, child abuse, bullying, cyberbullying and retaliation, as well as the detrimental social and psychological effects such behavior has on students' lives;

PAGE 45 – COMPLAINT

       d.     Require the District to conduct educational sessions wherein all staff, students, their parents, and volunteers are instructed about laws prohibiting hazing, harassment, child abuse, bullying, cyberbullying and retaliation and how such conduct impinges on students' freedom of speech and interferes with students' right to an education free from abuse and harassment;

       e.     Require the District to assign a peer mediator and/or other staff member to District schools to provide active monitoring for the schools and to address instances hazing, harassment, child abuse, bullying, cyberbullying and retaliation that arise at the schools;

       f.     Require the District to maintain statistical data concerning each complaint of the impingement of freedom of speech, hazing, bullying, child abuse, cyberbullying, or retaliation made by a student, parent, or staff member, as well as the specific action District personnel took to resolve the complaint;

       g.     Prevent Young from serving as a volunteer at any school in the District; and

       h.     Prevent Nordlum and Ashley from serving as a volunteer, coach, teacher, or agent at any school in the District.

6.     For general damages, including interest, according to proof;

7.     For punitive damages;

8.     For plaintiffs' attorneys' fees and costs incurred herein pursuant to 42 U.S.C. § 1988;

9.     For any and all allowable statutory damages;

10.    For all appropriate declaratory and equitable relief; and

11.    For all such other relief as is just and necessary under the circumstances.

/////

/////

PAGE 46 – COMPLAINT

## XXII.  DEMAND FOR JURY TRIAL

Plaintiffs request a jury trial.

Dated this 6th day of March, 2015.

JORDAN RAMIS PC


By: *s/ Leta E. Gorman*
LETA E. GORMAN
OSB # 984015
SHELLY M. DAMORE
OSB #022837
Two Centerpointe Dr 6th Flr
Lake Oswego OR 97035
Telephone:  (503) 598-7070
leta.gorman@jordanramis.com
shelly.damore@jordanramis.com
**Attorney(s) for Plaintiffs**