UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

TAISSA ACHCAR-WINKELS, RAY
ACHCAR-WINKELS, individually and as
Parents and Next Friends of S.A., a minor,

              Plaintiffs,

      v.

LAKE OSWEGO SCHOOL DISTRICT, an
Oregon municipal corporation; HEATHER
BECK, an individual; JENNIFER SCHIELE, an
individual; IAN LAMONT, an individual;
KAYLA NORDLUM, an individual; ASHLEY
NORDLUM, an individual; SUZANNE
YOUNG, an individual; and UNKNOWN
STAFF, unknown individuals,

              Defendants.

Case No. 3:15-cv-00385-ST

FINDINGS AND
RECOMMENDATION

STEWART, Magistrate Judge:

## **INTRODUCTION**

       Plaintiffs, Taissa and Ray Achcar-Winkels, filed this action against Lake Oswego School

District ("District") and several of its staff members and volunteers for failing to protect their

child, S.A., during hazing events required as part of her membership in the Lakeridge High

School ("Lakeridge") dance team.  The Second Amended Complaint (docket #43) ("SAC")

alleges 15 claims against the District and the following individuals:  Heather Beck ("Beck"),

Superintendent of the District; Jennifer Schiele ("Schiele"), Principal of Lakeridge; Ian Lamont

("Lamont"), Athletic Director at Lakeridge; Kayla and Ashley Nordlum, dance team coaches; and Suzanne Young ("Young"), an approved volunteer who manages the finances and public relations for the dance team.

Pursuant to FRCP 12(b)(6), defendant Young has filed a Motion to Dismiss (docket #38) the following seven claims alleged against her in the First Amended Complaint: Violation of 42 USC § 1983 Equal Protection Based on Gender (First), Violation of 42 USC § 1983 (Second), Hazing (Fourth), Intentional Infliction of Emotional Distress (Tenth), Child Abuse (Twelfth), Failure to Report Child Abuse (Thirteenth), and Retaliation (Fourteenth). Young also is named as a defendant in two other claims for Negligent Supervision and Hazing (Fifth) and Negligent Infliction of Emotional Distress (Ninth), which she did not initially include in her motion, but orally added to her motion at the hearing. After Young filed her motion, plaintiffs filed the SAC which identifies plaintiffs by name, but otherwise is identical to the First Amended Complaint. Therefore, Young's motion is deemed directed against these same claims in the SAC. For the reasons set forth below, that motion should be GRANTED.

## **STANDARDS**

In order to state a claim for relief, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" FRCP 8(a)(2). This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 US 662, 678 (2009), citing *Bell Atl. Corp. v. Twombly*, 550 US 544, 555 (2007). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*, quoting *Twombly*, 550 US at 555. In order to survive a motion to dismiss for failure to state a claim pursuant to

FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id*, quoting *Twombly*, 550 US at 570.

In evaluating a motion to dismiss, the court must accept the allegations of material fact as true and construe those allegations in the light most favorable to the non-moving party. *Parks Sch. of Bus., Inc. v. Symington*, 51 F3d 1480, 1484 (9th Cir 1995) ("Symington"). In addition to the allegations of the complaint, the court may also consider documents whose authenticity no party questions which are attached to, or incorporated by reference into, the complaint, as well as matters capable of judicial notice. *Knievel v. ESPN*, 393 F3d 1068, 1076 (9th Cir 2005). The court need not accept as true allegations in the complaint that contradict these sources. *Lazy Y Ranch, Ltd., v. Behrens*, 546 F3d 580, 588 (9th Cir 2008).

## ALLEGATIONS

The SAC alleges that S.A. began attending Lakeridge as a 14 year old freshman in September 2014. SAC, ¶ 25. In May 2014, as a junior high school student anticipating her transition to Lakeridge, S.A. auditioned for and became a member of Lakeridge's Pacer Dance Team ("dance team"). *Id*, ¶¶ 27–28. The dance team, including S.A. as a member, began regular practice in June 2014. *Id*, ¶ 29. In addition to practices, members of the dance team were required to attend three events in summer 2014: (1) a "bonding trip" in Gearhart, Oregon, on June 28–29, 2014; (2) an "initiation" in Lake Oswego, Oregon, on August 9–10, 2014; and (3) a "boot camp" in Sunriver, Oregon, on August 24–28, 2014. *Id*, ¶ 30. S.A. attended each of those events. *Id*, ¶ 31. During these events, members of the dance team, along with other students from Lakeridge, hazed, harassed, assaulted, and abused S.A. and other new members of the dance team. *Id*, ¶¶ 33–53.

On August 11, 2014, S.A. reported the hazing activities of August 9 to the dance team's technique coach. *Id*, ¶ 45. The same day, the technique coach reported the hazing activities to Kayla Nordlum and Lamont. *Id*. At the boot camp in Sunriver, Kayla and Ashley Nordlum targeted S.A. for discussing initiation. *Id*, ¶ 51.

Young was a volunteer in charge of finances and public relations for the dance team. *Id*, ¶ 19. As a volunteer, Young was subject to the District Volunteer Guidelines. *Id*, ¶ 19 & Ex. 5. Young "knew and approved of" the dance team's events in the summer of 2014. *Id*, ¶ 32. In addition, Young "knew or should have known about the activities in advance of the evening but did nothing." *Id*, ¶ 42. After S.A. reported the activities as hazing, Young "posted comments about Plaintiff Mother (who is of Brazilian descent) on Facebook and sent harassing texts to her. Young has publically called Plaintiff Parents and S.A. liars." *Id*, ¶ 58 & Exs. 11 & 12 (citations omitted).

## FINDINGS

### I.    First and Second Claims:  42 USC § 1983

The First and Second Claims allege that all defendants, including Young, violated 42 USC § 1983. To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States and must show that the alleged deprivation was committed by a "person acting under the color of state law." *West v. Atkins*, 487 US 42, 48 (1988).

The First Claim alleges that defendants' conduct "violated the right of S.A. not to be deprived of equal protection of the laws on the basis of gender under the Fourteenth Amendment to the United States Constitution (42 USC § 1983)." SAC, ¶ 82. The Second Claim alleges that defendants' conduct "acting under 'color of law' toward plaintiffs, violated fundamental rights

afforded to them as guaranteed by the laws of the United States government and the State of

Oregon, which conduct deprived the plaintiffs of rights, privileges, and immunities, all in

violation of the Civil Rights Act codified as 42 USC § 1983." *Id*, ¶ 86.

### A.    Under Color of State Law

Young argues that the SAC fails to state a § 1983 claim against her because it does not

establish that she was "acting under the color of state law." "[S]ection 1983 only provides a

remedy against persons acting under color of state law." *Ibrahim v. Dep't of Homeland Sec.*, 538

F3d 1250, 1257 (9th Cir 2008). "[S]tate employment is generally sufficient to render the

defendant a state actor . . . ." *Lugar v. Edmondson Oil Co., Inc.*, 457 US 922, 935 n18 (1982).

On the other hand, private actors are presumed to be outside the scope of § 1983 as not acting

under color of state law. *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F3d 916, 922 (9th

Cir  2011). "The ultimate issue in determining whether a person is subject to suit under § 1983 is

the same question posed in cases arising under the Fourteenth Amendment:  is the alleged

infringement of federal rights fairly attributable to the [government]?" *Kirtley v. Rainey*, 326

F3d 1088, 1092 (9th Cir 2003) (alteration in original) (citation omitted).

To identify whether a private actor engages in state action, four different tests are used:

"(1) public function; (2) joint action; (3) governmental compulsion or coercion; and

(4) governmental nexus." *Id* (citations omitted). "Under the public function test, when private

individuals or groups are endowed by the State with powers or functions governmental in nature,

they become agencies or instrumentalities of the State and subject to its constitutional

limitations." *Id* at 1093 (internal quotation marks omitted), quoting *Lee v. Katz*, 276 F3d 550,

554–55 (9th Cir 2002).  Under the joint action test, "the state has so far insinuated itself into a

position of interdependence with the private entity that it must be recognized as a joint

participant in the challenged activity.  This occurs when the state knowingly accepts the benefits

derived from unconstitutional behavior." *Id*, quoting *Symington*, 51 F3d at 1486 (internal

citations, brackets and quotation marks omitted).  Under the compulsion test, the coercive

influence or "significant encouragement" of the state effectively converts a private action into a

government action.  *Id* at 1094, citing *Sutton v. Providence St. Joseph Med. Ctr.*, 192 F3d 826,

836–37 (9th Cir 1999).  "[T]he nexus test asks whether 'there is a such a close nexus between the

State and the challenged action that the seemingly private behavior may be fairly treated as that

of the State itself.'"  *Id* at 1094–95, quoting *Brentwood Acad. v. Tenn. Secondary Sch. Athletic

Ass'n*, 531 US 288, 295 (2001).

     The SAC fails to allege facts to show that Young acted under color of state law.

Plaintiffs allege only that Young  was "an approved volunteer and was an agent of the District

and was in charge of the finances and public relations for the Lakeridge High School Dance

Team."  SAC, ¶ 19.  The conclusory allegation that Young, acting as a volunteer for the dance

team, "was an agent of the District" cannot survive a motion to dismiss.  Plaintiffs have not cited,

and the court has not found, any support for the proposition that a person who volunteers for a

school is an "agent" of that school and presumed to be acting under color of law.  Not even state

employees are presumed to be state actors.  *Lugar*, 457 US at 935 n18.  *See also Naffe v. Frey*,

789 F3d 1030, 1036 (9th Cir 2015), quoting *Myers v. Bowman*, 713 F3d 1319, 1329 (11th Cir

2013) ("But '§ 1983 does not federalize all torts or other deprivations of rights committed by a

person who is a law enforcement officer or other government agent.'").  Moreover, in Oregon,

"an agent is one who has authority to act for another in contractual dealings with third persons."

*Taylor v. Werner Enters., Inc.*, 329 Or 461, 468, 988 P2d 384, 388 (1999) (*en banc*) (citation

omitted).  The SAC does not allege any facts suggesting Young had any authority to act for the District in its contractual dealings with third persons.

Nor does the SAC allege any facts to satisfy any of the four tests for state action by Young as a private actor.  It does not allege that the District delegated any of its powers or functions to Young, that Young jointly participated with the District in the alleged hazing, that the District in any way compelled Young to act, that Young had a close nexus to the District, or even that Young conspired with any District employee against S.A.  No allegations reveal that Young was urged by the District to do anything with respect to S.A., let alone that, on behalf of the District, she had the authority or power to stop any of the alleged conduct that resulting in harm to S.A.

Plaintiffs respond that discovery may reveal additional facts supporting their theory as to Young's liability under § 1983 for failing to ensure than no hazing or intimidation of S.A. occurred.  For example, they may learn that Young was paid by the District for her services, making her an employee.  In addition, based on documents describing Young's role as the "Team Manager" and the "CFO," plaintiffs believe that she did more than simply handle finances of the dance team and had more active involvement.  Since her daughter had been on the dance team in the past, they suspect that she may have hosted some dance team events at her house or otherwise participated in them.

The SAC does not allege sufficient facts to establish Young, as a volunteer for the dance team, was acting under color of state law.  However, if plaintiffs later acquire evidence through discovery to support their claim that Young acted under color of state law, then they are free to seek to amend at that time.  Accordingly, both the First and Second Claims against Young should be dismissed.

B.    **Constitutional Right**

Young also argues that plaintiffs' § 1983 claims fail to allege the violation of any constitutional right.

1.    **First Claim: Equal Protection**

The First Claim alleges a denial of equal protection on the basis of gender under the Fourteenth Amendment.  SAC, ¶ 82.  In order to establish a § 1983 equal protection violation, a plaintiff must show that individual defendants, acting under color of state law, discriminated against her as a member of an identifiable class and that the discrimination was intentional. *Flores v. Morgan Hill Unified Sch. Dist.*, 324 F3d 1130, 1134 (9th Cir 2003) (citation omitted).

An equal protection claim turns on proof that the defendant "acted in a discriminatory manner and that the discrimination was intentional." *Reese v. Jefferson Sch. Dist. No. 14J*, 208 F3d 736, 740 (9th Cir 2000) (citation omitted).  A "long line of Supreme Court cases make clear that the Equal Protection Clause requires proof of discriminatory *intent* or *motive*." *Navarro v. Block*, 72 F3d 712, 716 (9th Cir 1995) (citations omitted).  "[T]he plaintiff[] must show either that the defendants intentionally discriminated or acted with deliberate indifference. . . . 'Deliberate indifference' is found if the school administrator 'responds to known peer harassment in a manner that is clearly unreasonable.'" *Flores*, 324 F3d at 1135, quoting *Davis v. Monroe Cnty. Bd. of Educ.*, 526 US 629, 649 (1999).  Plaintiffs fail to allege sufficient factual matter, accepted as true, to establish that Young's conduct toward S.A. was intended to cause or motivated by gender discrimination.

First, the SAC does not allege that S.A. was treated differently than her male peers in any respect.  In response, plaintiffs argue that the alleged humiliating activities clearly would never have occurred on a boys' sports team and were specifically targeted to the sensitivities of young

women.  Such allegations do not, however, appear in the SAC.  And even if they did, the SAC

does not allege that Young's allegedly discriminatory conduct was intended to cause or

motivated by gender discrimination.

Only two allegations in the SAC mention male students.  The first states:  "Around

9:00 p.m., S.A. was eventually taken to a field at Lakeridge High School where approximately

25 – 30 male and female high school students were waiting to terrorize S.A. and the other Team

members. "  SAC, ¶ 38.  The second states: "Male students pushed and grabbed S.A. and pushed

her into other Team members.  S.A. and other Team members were told and were forced to

dance with and for the male students."  *Id*, ¶ 40.  The only references to "gender" are the

statement of the claim itself and the conclusory allegation that "defendants violated the right of

S.A. not to be deprived of equal protection of the laws on the basis of gender under the

Fourteenth Amendment."  *Id*, ¶ 82.  Construing the facts in the light most favorable to plaintiffs,

these allegations are insufficient to establish that Young, or indeed any defendant, was motivated

by an intent to discriminate on the basis of gender.

Thus, the First Claim against Young should be dismissed.

## 2.    <u>Second Claim:  "Violation of 42 USC § 1983"</u>

Young moves to dismiss the Second Claim because it fails to identify which

constitutional right she violated.  In response, plaintiffs argue that S.A. was precluded from

enjoying her right to an equal education because she was harassed and ridiculed at school and

forced off the dance team due to severe harassment and retaliation by coaches, parents, teachers,

students and dance team members, all of which was promoted by Young's public statements

against plaintiffs.

The only reference in the SAC to S.A. being deprived of her right to an equal education is that the alleged conduct "was so severe, pervasive and objectively offensive that it deprived S.A. of access to the educational opportunities, extra-curricular activities and/or benefits afforded by the District and to which S.A. was entitled." SAC, ¶ 70. However, denial of access to extra-curricular activities is not constitutionally protected. *Seamons v. Snow*, 84 F3d 1226, 1234–35 (10th Cir 1996). Although not alleged, plaintiffs asserted at oral argument that S.A. was deprived of her education because she was told not to attend assemblies and was so intimidated and harassed at school that she became sick, had to be hospitalized, and missed school as a result. Acknowledging that this claim is deficient, plaintiffs seek permission to amend in order to specifically a claim for denial of substantive due process on that basis.

The ultimate inquiry in any substantive due process case is whether the "behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience" or "interferes with rights implicit in the concept of ordered liberty." *Cnty. of Sacramento v. Lewis*, 523 US 833, 847 & n8 (1998) (internal quotations and citations omitted). To prove a substantive due process claim, the plaintiff must show something beyond even the most culpable standard of tort liability. *Id* at 848; *see also Daniels v. Williams*, 474 US 327, 331 (1986) ("Historically, this guarantee of due process has been applied to deliberate decisions of government officials to deprive a person of life, liberty, or property."). In other words, viable substantive due process claims must be more than "tort actions dressed up in constitutional garb." *Larson v. Neimi*, 9 F3d 1397, 1399 (9th Cir 1993), *superseded by rule on other grounds as recognized in C.B. v. City of Sonora*, 769 F3d 1005, 1016 (9th Cir 2014).

Construing the allegations in the light most favorable to plaintiffs, the only conduct by Young directed specifically at S.A. is publically calling her a liar. SAC, ¶ 58. Publically calling

someone a liar, even a minor child, cannot be said to "shock the contemporary conscience" or "interfere[] with rights implicit in the concept of ordered liberty." *Lewis*, 523 US at 847 & n8 (internal quotation marks omitted). Therefore, no denial of substantive due process may be premised on that conduct.

Plaintiffs also appear to allege that Young violated S.A.'s substantive due process rights by failing to protect her from harm by third parties. However, the general rule is that "members of the public have no constitutional right to sue state actors who fail to protect them from harm inflicted by third parties." *Johnson v. City of Seattle*, 474 F3d 634, 639 (9th Cir 2007) (citation omitted). This general rule springs from the observation of the Supreme Court over 20 years ago that:

> nothing in the language of the Due Process Clause itself requires a state to protect the life, liberty, and property of its citizens against invasion by private actors. The Clause is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security. It forbids the State itself to deprive individuals of life, liberty, or property without "due process of law," but its language cannot fairly be extended to impose an affirmative obligation on the State to ensure that those interests do not come to harm through other means.

*DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 US 189, 195 (1989).

This rule is modified by two exceptions. The "special relationship" exception applies where a state actor abuses a special state-created relationship with an individual, such as in the case of custody or involuntary hospitalization. *Morgan v. Gonzales*, 495 F3d 1084, 1093–94 (9th Cir 2007), *cert. denied sub nom. Morgan v. Mukasey*, 552 US 1186 (2008); *L.W. v. Grubbs*, 974 F2d 119, 121 (9th Cir 1992). Under the second "danger creation" exception, "state actors may be held liable where they affirmatively place an individual in danger by acting with deliberate indifference to a known or obvious danger in subjecting the plaintiff to it." *Kennedy v. City of Ridgefield*, 439 F3d 1055, 1062 (9th Cir 2006) ("*Ridgefield*"), *denying pet. for rehr'g en banc*,

440 F3d 1091 (2006) (internal citations, quotations, and brackets omitted); *see also Huffman v. Cnty. of Los Angeles*, 147 F3d 1054, 1059 (9th Cir 1998), *cert. denied*, 526 US 1038 (1999).  The second exception applies where the state creates a "danger that the plaintiff would not have otherwise faced, as when the police reveal an accuser's name after assuring her that she would be warned before any further action was taken." *Shanks v. Dressel*, 540 F3d 1082, 1087 n5 (9th Cir 2008), citing *Ridgefield*, 439 F3d at 1061.  To be held liable, the defendant must "'affirmatively plac[e] an individual in a position of danger, effectively stripping a person of her ability to defend herself, or cutting off potential sources of private aid.'" *Johnson v. Dallas Indep. Sch. Dist.*, 38 F3d 198, 201 (5th Cir 1994), *cert. denied*, 514 US 1017 (1995), quoting *Wideman v. Shallowford Cmty. Hosp., Inc.*, 826 F2d 1030, 1035 (11th Cir 1987).

At this point, plaintiffs allege no facts supporting either the "special relationship" or "danger creation" exception.  The SAC specifically alleges that Young was not present at the initiation (SAC, ¶ 42) and does not allege that Young was present at the other hazing events at issue.  Thus, plaintiffs fail to state a substantive due process claim against Young, and the Second Claim against her should be dismissed.

Plaintiffs also seek to amend to add a § 1983 claim for violation of the First Amendment premised on S.A. being told to stay silent or risk being kicked off the dance team.  Plaintiffs allege that Kayla Nordlum violated S.A. freedom of speech by making this statement.  SAC, ¶ 50.  Because Young did not make this statement, plaintiff's request for leave to amend to allege this claim against Young should be denied.

## II.    Fourth, Fifth, Ninth, Twelfth, and Fourteenth Claims:  Negligence

The Fourth, Fifth, Ninth, Twelfth, and Fourteenth Claims all arise from allegations that Young was negligent by not attempting to prevent the hazing of S.A.  The Fourth Claim

(Hazing) alleges that defendants "subjected S.A. to an unreasonable risk of harm and adversely affected the physical health and safety of S.A." as a result of the hazing. SAC, ¶ 97. The Fifth Claim (Negligent Supervision and Hazing) alleges that defendants breached their duty of care owed to plaintiffs "to appropriately monitor and supervise the students in attendance at the school and during school activities," including "a recognition that any hazing or harassing event might be taking place." SAC, ¶¶ 103–05. The Ninth Claim (Negligent Infliction of Emotional Distress) alleges that defendants negligently inflicted emotional distress on plaintiffs by breaching their "duty to plaintiffs to be vigilant in preventing hazing, assaults, harassment and/or other illegal acts directed toward and inflicted upon S.A." SAC, ¶ 132. The Twelfth Claim (Child Abuse) alleges that "[t]he conduct of defendants described herein equates to child abuse under ORS 419B.005." SAC, ¶ 147. The Fourteenth Claim (Retaliation) alleges that defendants "engaged in repeated retaliation against plaintiffs in violation of ORS 339.362 and they did nothing to stop others from engaging in retaliation against plaintiffs." SAC, ¶ 159. Oregon's anti-hazing statute referenced in the Fourteenth Claim, ORS 339.362, prohibits "reprisal or retaliation against a victim of . . . harassment, intimidation or bullying or an act of cyberbullying" by a "school employee, student or volunteer" and also provides that a "volunteer . . . is encouraged" to report such acts "to the appropriate school official."

    As plaintiffs concede, they have no private right of action for hazing or retaliation under Oregon law. *T.L. ex rel. Lowry v. Sherwood Charter Sch.*, No. 03:13-cv-01562-HZ, 2014 WL 897123, at *16 (D Or Mar. 6, 2014), *appeal docketed*, No. 15-35060 (9th Cir 2015) (holding that ORS 339.364 "precludes a statutory tort claim"). Instead, they must pursue a claim for common law negligence, battery, or some other intentional tort independent of any duty under ORS 339.362. *Id.* Plaintiffs also concede that the Twelfth Claim for child abuse is more properly

based on a negligence theory by alleging that defendants negligently enabled others to subject

S.A. to child abuse and, thus, is redundant with the Fifth Claim alleging negligence.

Accordingly, the Fourth (Hazing), Twelfth (Child Abuse), and Fourteenth (Retaliation) Claims

fail to state viable claims and should be dismissed *sua sponte* as to all defendants with prejudice.

That leaves the Fifth and Ninth Claims which allege the torts of negligence and negligent

infliction of emotional distress respectively.  However, both of those claims fail to allege

sufficient facts to hold Young liable for any negligent conduct.  Plaintiffs must allege that Young

directly participated in the tortious conduct, or aided and substantially assisted the hazing of S.A.

*See, e.g., Granewich v. Harding*, 329 Or 47, 53–54, 985 P2d 788, 792 (1999) (a person may be

liable for another's tortious conduct if he acts in concert, knows the conduct constitutes a breach

of duty, and gives substantial assistance or encouragement, such that his own conduct constitutes

a breach of duty).  Plaintiffs do not allege that Young was present during or had any involvement

in the hazing events.  Plaintiffs do not allege that Young knew that S.A. would be subject to

harm during those events, knew that anyone intended to or was likely to harm S.A. during the

events, or that Young provided or procured an opportunity for S.A. to be harmed.  Plaintiffs

allege only that Young "knew and approved of the events" held by the dance team generally, and

that she "knew or should have known about the activities" at initiation.  SAC, ¶¶ 32, 42.  That is

not enough.  To state a plausible negligence claim, plaintiffs must allege that Young participated

in the tortious conduct or substantially assisted others in harming S.A.  Therefore, the remaining

Fifth and Ninth Claims should be dismissed as to Young.

Plaintiffs seek leave to amend to cure these deficiencies in the Fifth Claim premised on

Lakeridge's strong tradition of hazing, Young's knowledge of that tradition based on the

participation of her daughter on the dance team for four years, her posting of photographs

(presumably related to hazing), and her knowledge that hazing violated the District's policies. To the extent that plaintiffs believe they can allege facts sufficient to show that Young participated in, aided, or procured the alleged hazing or child abuse, they should be permitted to do so.

III.    **Tenth Claim:  Intentional Infliction of Emotional Distress**

The Tenth Claim for intentional infliction of emotional distress ("IIED") alleges that "[d]efendants owed a duty to plaintiffs to be vigilant in preventing hazing, assaults, harassment and/or other illegal acts directed toward and inflicted upon S.A. as a student attending Lakeridge High School and, in accordance, therewith, to refrain from inflicting emotional distress upon the plaintiffs."  SAC, ¶ 140.  In order to establish an IIED claim , a plaintiff must plead and prove that:  (1) the defendant intended to inflict severe mental or emotional distress or that the distress is substantially certain to result from defendant's conduct; (2) defendant's acts caused the plaintiff severe emotional distress; and (3) the defendant's acts "'constituted an extraordinary transgression of the bounds of socially tolerable conduct.'"  *McGanty v. Staudenraus*, 321 Or 532, 543, 901 P2d 841, 849 (1995) (*en banc*), quoting *Sheets v. Knight*, 308 Or 220, 236, 779 P2d 1000, 1010 (1989).  "Conduct that is merely rude, boorish, tyrannical, churlish and mean [is insufficient to be actionable, and] insults, harsh or intimidating words, or rude behavior ordinarily [do not] result in liability even when intended to cause distress."  *Watte v. Edgar Maeyens, Jr., M.D., P.C.*, 112 Or App 234, 239, 828 P2d 479, 481, *rev. denied*, 314 Or 176, 836 P2d 1345 (1992), citing *Hall v. May Dep't Stores*, 292 Or 131, 135, 637 P2d 126, 129 (1981).

At oral argument, plaintiffs conceded that the Tenth Claim does not currently meet the standard for an IIED claim against Young because it only alleges name-calling.  However, plaintiffs believe that Young engaged in other conduct that meets the high threshold for this

claim and seeks to amend to add those facts.  Thus, the Tenth Claim should be dismissed for

failure to state a claim against Young with leave to amend.

**IV.**     **Thirteenth Claim:  Failure to Report Child Abuse**

The Thirteenth Claim alleges that defendants knew that S.A. was subjected to child abuse

as defined in ORS. 419B.005, but breached their duty to report that child abuse.  SAC, ¶¶ 152–

54.  However, plaintiffs fail to state a claim against Young for failing to report child abuse

because she had no duty to do so.

The duty to report child abuse extends to any "public or private official" having

reasonable cause to believe that a child has suffered abuse.  ORS 419B.010(1).  A "public or

private official" includes a "school employee," but not volunteers.  ORS 419B.005(5)(c).  In

addition, pursuant to ORS 339.356, all school districts must adopt policies preventing

harassment, intimidation, bullying, and cyberbullying that include procedures for reporting such

conduct.  While the policy must "require" school employees to report acts of bullying, the policy

must only "[a]llow a student or volunteer" to report.  ORS 339.356(2)(f)(B), (D).  Consistent

with that statutory direction, the District's Policy requires employees to report hazing, child

abuse, or other conduct in violation of the Policy, but does not place any requirement on

volunteers.  SAC, ¶¶ 22(a), (d); Ex. 7.  Instead, volunteers are merely "encouraged to

immediately report" their concerns about hazing and are not listed as persons required to report

child abuse.  *Id.*  As a mere volunteer, Young had no duty to report child abuse.  Therefore, the

Thirteenth Claim should be dismissed as to Young with prejudice.

## RECOMMENDATION

Defendant Young's Motion to Dismiss (docket #38) should be GRANTED as follows:

(1) against the Fourth (Hazing), Twelfth (Child Abuse), Thirteenth (Failure to Report Child

Abuse) and Fourteenth (Retaliation) Claims with prejudice; and (2) against the First (Equal Protection), Second (Substantive Due Process), Fifth (Negligence), Ninth (Negligent Infliction of Emotional Distress) and Tenth (Intentional Infliction of Emotional Distress) Claims without prejudice and with leave to amend.

In addition, the Fourth (Hazing), Twelfth (Child Abuse), and Fourteenth (Retaliation) claims should be dismissed *sua sponte* as to all defendants with prejudice.

## <u>SCHEDULING ORDER</u>

These Findings and Recommendation will be referred to a district judge. Objections, if any, are due Tuesday, September 08, 2015. If no objections are filed, then the Findings and Recommendations will go under advisement on that date.

If objections are filed, then a response is due within 14 days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED  August 21, 2015.


s/ Janice M. Stewart
Janice M. Stewart
United States Magistrate Judge