IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

**TAISSA and RAY ACHCAR-WINKELS,**
**individually and as Parents and Next Friends of**
**S.A., a minor,**

               Plaintiffs,

   v.

**LAKE OSWEGO SCHOOL DISTRICT et al.,**

               Defendants.

No. 3:15-cv-00385-YY

OPINION AND ORDER

**MOSMAN, J.**,

On February 21, 2017, Magistrate Judge Youlee Yim You issued her Findings and

Recommendation ("F&R") [142], recommending that Defendants' Motions for Summary

Judgment [82, 83, and 85] should be GRANTED in part and DENIED in part. Judge You also

recommends that: (1) Defendants' request to substitute the District in place of individual

defendants should be DENIED; (2) Defendants' request to strike Plaintiffs' prayer for punitive

damages should be DENIED; and (3) Defendant Lake Oswego School District's ("the District")

request to strike reference to any unknown defendant should be GRANTED. All parties objected

to portions of the F&R [148, 149, 150, and 152]. For the reasons listed below, I ADOPT in part

and REJECT in part Judge You's F&R.

## LEGAL STANDARD

The magistrate judge makes only recommendations to the court, to which any party may file written objections. The court is not bound by the recommendations of the magistrate judge, but retains responsibility for making the final determination. The court is generally required to make a de novo determination regarding those portions of the report or specified findings or recommendations as to which an objection is made. 28 U.S.C. § 636(b)(1)(C). However, the court is not required to review, de novo or under any other standard, the factual or legal conclusions of the magistrate judge as to those portions of the F&R to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 149 (1985); *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003). While the level of scrutiny with which I am required to review the F&R depends on whether or not objections have been filed, in either case, I am free to accept, reject, or modify any part of the F&R. 28 U.S.C. § 636(b)(1)(C).

## DISCUSSION

There are several portions of Judge You's F&R to which no party objects. In regard to these portions, I ADOPT Judge You's F&R as my own opinion. There are other portions, however, that drew several objections from one or more of the parties. These objections include: (1) Plaintiffs' objection to the recommendation to dismiss the Intentional Infliction of Emotional Distress ("IIED") claim; (2) the Nordlums' objection to the finding on the False Imprisonment claim; (3) all Defendants' objection to the finding on Plaintiffs' ability to pursue a purely emotional distress claim arising under negligence; and (4) Defendant Young's objection to the finding on foreseeability. In regard to these objected-to portions of the F&R, I provide the following supplemental analysis.[1]

---

[1] I address the relevant claims in the order that Judge You addressed them in her F&R, not the order in which they appear in the Third Amended Complaint [61].

## I.      Intentional Infliction of Emotional Distress (Sixth Claim)

In her F&R, Judge You recommends that I GRANT summary judgment in favor of Defendants Schiele, Kayla Nordlum ("Kayla"), and Young on Plaintiffs' IIED claim. Plaintiffs object to Judge You's recommendation, but only as it pertains to Schiele and Kayla. Accordingly, I GRANT summary judgment in Young's favor on the IIED claim. As against Schiele, I agree with Judge You that her conduct does not rise to the level of extreme or outrageous, and I GRANT summary judgment in her favor as well. As against Kayla, however, I find that her actions, if true, are sufficiently extreme or outrageous to support a claim of IIED. Thus, I DENY summary judgment in Kayla's favor on S.A.'s IIED claim.

To succeed on an intentional infliction of emotional distress claim, a plaintiff must prove that (1) the defendant intended to cause the plaintiff severe emotional distress, (2) the defendant's conduct was outrageous, i.e., extraordinarily beyond the bounds of socially tolerable conduct, and (3) the defendant's conduct actually caused the plaintiff's severe emotional distress. *T.L. ex rel. Lowry v. Sherwood Charter Sch.*, No. 03:13-cv-015620HZ, 2014 WL 897123, at *10 (D. Or. May 6, 2014) ("*Lowry I*") (citing *McGanty v. Staudenraus*, 901 P.2d 841, 849 (Or. 1995)); *McManus v. Auchincloss*, 353 P.3d 17, 26 (Or. App. 2015), *review denied*, 363 P.3d 1287 (Or. 2015). Whether the conduct qualifies as outrageous is a case-specific inquiry but ultimately a question of law for the court. *See Lowry I*, 2014 WL 897123, at 10; *House v. Hicks*, 179 P.3d 730, 736 (Or. App. 2008). There are several contextual factors that help the court make this determination, the most important of which being the existence of a special relationship between the plaintiff and defendant. *House*, 179 P.3d at 737. If the behavior was directed toward "the more vulnerable partner in a 'special relationship,'" a court is "more likely to consider behavior outrageous." *McManus*, 353 P.3d at 26.

### A.  Special Relationship

Plaintiffs assert that Judge You did not explicitly consider the existence of a special relationship when determining that Schiele or Kayla's actions were not outside the bounds of socially tolerable conduct.[2] When considering this factor, Plaintiffs argue, both Schiele and Kayla's behavior rises to the level of extreme and outrageous. District Defendants (the District, Schiele, Beck, and Lamont) and the Nordlums respond that even though the existence of a special relationship is relevant in determining whether conduct was extreme or outrageous, there is no special relationship between a public school and a public school student. As such, Defendants argue Judge You's determination that the conduct was insufficient to support an IIED claim should stand.

In the context of a claim for emotional distress, the existence of a special relationship is "driven by the facts" of the particular case. *Shin v. Sunriver Preparatory Sch., Inc.*, 111 P.3d 762, 770 (Or. App. 2005). In *Shin*, for example, a foreign student sued her private boarding school for failing to adequately supervise her during a visit from her father, which resulted in the student being raped and sexually abused. *Id.* at 769-70. The boarding school was "not at all like a typical high school," but rather acted '"in the parental role' for plaintiff and others who lived . . . with homestay parents, whom the school specially approved." *Id.* at 771. Based on these facts, the Oregon court held that the school had a "heightened duty . . . to protect the student from emotional harm" and that "the student's legally protected interest is sufficiently important to support the imposition of liability for negligently causing emotional harm." *Id.* at 770.

---

[2] To be sure, even though Judge You did not explicitly consider the existence of a special relationship when addressing Plaintiffs' IIED claim, she did consider and deny the existence of a special relationship when considering Plaintiffs' purely emotional distress claims arising under negligence. Thus, it is possible that Judge You intended her conclusion on a special relationship in the negligence context to apply to her analysis of the IIED claim.

This Court has found on at least two prior occasions that no special relationship exists between the typical public school and public school student. *Lowry I*, 2014 WL 897123, at *11; *Doe ex rel. Farley, Piazza & Assocs. v. Gladstone Sch. Dist.*, No. 3:10-cv-01172-JE, 2012 WL 2049173, at *13 (D. Or. June 6, 2012). In *Gladstone*, the earlier of these cases, Judge Jelderks found that a situation involving a public school and public school student did "not begin to approach the circumstances presented in *Shin* and [did] not support a conclusion that a special relationship existed between the parties." 2012 WL 2049173, at *13. In reaching this conclusion, he relied, in part, on the absence of an Oregon case "that has held that such a relationship exists between a public school student and his or her school." *Id.*; *see also Lowry I*, 2014 WL 897123, at *11 ("[N]o Oregon case has held that a special relationship exists between a public school and a public school student him- or herself, much less between the parent of the student and the school."). He recognized that schools in Oregon have a "duty of supervision" but found this duty was "based on the 'foreseeable risk of harm' and not a *separate* legally protected interest." *Id.* (citing *Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J*, 734 P.2d 1326, 1337 (Or. 1987)).

But finding that no Oregon case has ever found a special relationship between a public school and public school student does not mean that one does not exist. Moreover, the fact that *Shin* found a special relationship in a situation where the school had significant custodial control of the student does not automatically mean that an Oregon court would not find a special relationship where the school's control is less significant. Because no Oregon court has directly addressed this issue, my task is to "predict how the highest state court would decide the issue using intermediate appellate court decisions, decisions from other jurisdictions, statutes, treatises,

and restatements as guidance." *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996).

Under the Second Restatement of Torts, there was "no provision that specifically identified the school-student relationship as special." Restatement (Third) of Torts: Phys. & Emot. Harm § 40 cmt. l (2012). In the Third Restatement, however, the list of recognized special relationships lengthened to include, among others, the school-student relationship. *Id.* at § 40(b) ("Special relationships giving rise to the duty provided in Subsection (a) include: . . . (5) a schools with its students . . . .); Dan B. Dobbs et al., *The Law of Torts* § 408 (2d ed. 2016 update). As with other special relationships, the school's duty toward the student is limited to "risks that occur while the student is at school or otherwise engaged in school activities." Restatement (Third) of Torts: Phys. & Emot. Harm § 40 cmt. l. Importantly, this shift from the Restatement (Second) to the Restatement (Third) postdates Judge Jelderks's opinion in *Gladstone*.

Other state courts have explicitly recognized a special relationship between schools and their students. In *C.A. v. William S. Hart Union High School District*, for example, the California Supreme Court stated that "a school district and its employees have a special relationship with the district's pupils." 270 P.3d 699, 704 (Cal. 2012). This relationship stems "from the mandatory character of school attendance and the comprehensive control over students exercised by school personnel, 'analogous in many ways to the relationship between parents and their children.'" *Id.* Additionally, in Washington, it is "well-established" that there is a "special relationship between school districts and their pupils." *Quynn v. Bellevue School District*, 383 P.3d 1053, 1057 (Wash. App. 2016). Both of these cases dealt with public schools, as opposed to the type of private institution at issue in *Shin*.

More fundamentally, the Oregon Supreme Court recognized a special "duty of supervision" imposed upon schools as far back as 1987. *See Fazzolari By & Through Fazzolari v. Portland Sch. Dist. No. 1J*, 734 P.2d 1326, 1337 (Or. 1987). Specifically, the court stated that schools have "a special duty arising from the relationship between educators and children entrusted to their care apart from any general responsibility not unreasonably to expose people to a foreseeable risk of harm." *Id.* The court also noted that the "vast majority of students are minors, and school personnel assume a great deal of authority over their conduct during the school day." *Id.* This degree of control is a touchstone of special relationships in Oregon. *See Conway v. Pac. Univ.*, 924 P.2d 818, 824 (Or. 1996) ("[T]he party who is owed the duty is placed in a position of reliance upon the party who owes the duty; that is, because the former has given responsibility and control over the situation at issue to the latter, the former has a right to rely upon the latter to achieve a desired outcome or resolution.").

In *Gladstone*, Judge Jelderks recognized this "special duty" imposed upon schools but distinguished the existence of a special duty from the existence of a special relationship. *See Gladstone*, 2012 WL 2049173, at *13 ("While schools have a 'duty of supervision' towards their students . . . the determination of a school's negligence is still one based on the 'foreseeable risk of harm' and not on a *separate* legally protected interest." (emphasis in original)). Although I agree that the questions are theoretically distinct, finding a special duty goes a long way in finding the existence of a special relationship. This is especially true, given the fact that *Fazzalori's* reasoning for finding a special duty is similar to the rationale for finding a special relationship. Thus, because of a shift in the law since *Gladstone* was decided, I do not feel compelled to reach the same conclusion this Court has made twice previously in regard to the relationship between public schools and public school students. *See T.L. ex rel. Lowry v.*

*Sherwood Charter Sch.*, 68 F. Supp. 3d 1295, 1322 (D. Or. 2014) ("*Lowry II*") (relying on

*Gladstone* to conclude there was no special relationship between a public school and a student).

Based on the special duty recognized in *Fazzolari* and the treatment of special

relationships in the Third Restatement and other jurisdictions, I find that the Oregon Supreme

Court would likely recognize a special relationship between a public school and a public school

student. The reasoning for finding a special relationship in this context, however, does not extend

to a school and a student's parent. Thus, as this Court has found before, I find there is no special

relationship between a public school and a student's parent.

### B.  Extreme or Outrageous

In light of this finding, I must determine whether Judge You's conclusion regarding the

nature of Schiele and Kayla's conduct is correct. First, because there is no special relationship

between S.A.'s parents and either Schiele or Kayla, I agree with Judge You that their behavior

toward the parents is not sufficient to support a claim for IIED.  Thus, I GRANT summary

judgment in favor of Schiele and Kayla on the parents' IIED claim.

In regard to S.A., I must view Schiele and Kayla's conduct within the context of their

special relationship with S.A. Even when viewed in this context, however, there is no conduct on

the part of Schiele toward S.A. that rises to the level of extreme or outrageous. Her behavior

might have been "rude, boorish, tyrannical, churlish, and mean," *Patton v. J.C. Penney Co., Inc.*,

719 P.2d 854, 858 (Or. 1986), *abrogated on other grounds by McGanty*, 901 P.2d 841, but it is

not sufficient to support an IIED claim. Furthermore, even if Schiele's conduct was extreme or

outrageous, it is unreasonable to conclude that she was acting intentionally rather than

negligently or recklessly. *See Lowry II*, 68 F. Supp. 3d at 1320. As such, I GRANT summary

judgment in Schiele's favor on S.A.'s IIED claim.

As to Kayla, however, the outcome is different. In the light most favorable to Plaintiffs, the evidence shows Kayla retaliated against S.A., a 14-year-old high school student, for reporting behavior that the student subjectively believed was hazing. This alleged retaliation included threatening suspension of S.A., placing S.A. as an alternate on the Pacer Dance Team's ("PDT") jazz group, criticizing S.A. at practice, and excluding S.A. from the PDT cheer squad. Such behavior by a coach toward a student would likely have a chilling effect on other students reporting hazing or other harmful interactions to trusted adults in the future. Thus, when viewed in the context of a special relationship, Kayla's retaliatory actions against S.A. were extraordinarily beyond the bounds of socially tolerable conduct. I reject Judge You's recommendation on this issue and DENY summary judgment in Kayla's favor on S.A.'s IIED claim.

## II.     False Imprisonment (Seventh Claim)

To succeed on a claim of false imprisonment, a plaintiff must prove that: (1) the defendant confined the plaintiff, (2) the defendant intended the act that caused the confinement, (3) the plaintiff was aware of the confinement, and (4) the confinement was unlawful. *Fossen v. Clackamas Cty.*, 352 P.3d 1288, 1291 (Or. App. 2015). Judge You found that there was a factual dispute over nearly every one of these elements. I agree and, therefore, DENY summary judgment in Kayla's favor on this claim.

Only the Nordlums object to this portion of the F&R. In their objections, the Nordlums argue that there is no dispute of material fact as to Kayla's intent or S.A.'s consent to the confinement. To support their argument on intent, the Nordlums point to an August 25, 2014 email that Kayla sent to the parents of PDT dancers. The Nordlums argue that when viewed in its entirety, the email shows Kayla's intent was to use the tape to identify girls who snuck out at

night, not prevent the girls from leaving their rooms. Plaintiffs respond that this email does just the opposite: it shows that Kayla intended to tape the doors to prevent the girls from trying to leave the room.

I agree with Judge You that Kayla's intent is a disputed factual issue. The entirety of the email can be read to show that Kayla's intent was simply to identify which girls had left the room, but this is not the only reasonable interpretation. In the email, Kayla states she had to prevent the girls from sneaking out or trying to leave, and she taped the doors to "make sure" the girls remained in their rooms. Additionally, S.A. stated that the girls would not have been able to get out of the rooms had they tried, and at least one dancer described the taped doors as "locked." Even though Kayla disputes these testimonies, when credited as true, they suggest the taping was done in a manner to prevent the girls from leaving the room, which undercuts Kayla's claim that she only intended to identify which girls had opened their doors. Accordingly, as Judge You concluded, there is a factual dispute on Kayla's intent.

The Nordlums also argue that S.A. consented to the confinement. Specifically, the Nordlums points to the fact that (1) S.A. never objected to being taped in the room or asked to leave and (2) Ms. Achcar-Winkels responded to Kayla's August 25, 2014 email about the taping with the statement, "You ARE doing the right things." Plaintiffs respond that S.A. did ask if the girls could leave but Kayla said no, and that Ms. Achcar-Winkels sent her response to Kayla's email before understanding the entire doorknob was taped.

Again, I agree with Judge You that there is a factual dispute as to whether S.A., or Ms. Achcar-Winkels on behalf of S.A., consented to the confinement. In her declaration, S.A. asserts that she did not consent to the confinement, and there is no affirmative evidence to suggest that she did. Furthermore, Ms. Achcar-Winkels's alleged lack of understanding regarding the manner

in which the doorknob was taped undercuts her ability to have consented to the taping in her email response to Kaya. Thus, viewed in the light most favorable to Plaintiffs, neither S.A. nor Ms. Achcar-Winkels consented to the extent of taping that allegedly occurred.

The Nordlums only object to Judge You's findings regarding Kayla's intent and S.A.'s alleged consent. As such, because these issues involve disputed facts, I ADOPT Judge You's recommendation and DENY summary judgment in Kayla's favor on the false imprisonment claim.

## III. Negligence (Fourth Claim)

To prevail on a negligence claim in Oregon, a plaintiff must prove either that "there existed 'a status, a relationship, or a particular standard of conduct that creates, defines, or limits the defendant's duty,' the breach of which is actionable or that the defendant's conduct 'unreasonably created a foreseeable risk to a protected interest of the kind of harm that befell the plaintiff.'" *Gladstone*, 2012 WL 2049173, at *12 (quoting *Fazzolari*, 734 P.2d at 1336). This second "general foreseeability" standard subsumes "the traditional duty-breach analysis" and requires a plaintiff to prove "that the defendant's conduct created a foreseeable and unreasonable risk of legally cognizable harm to the plaintiff and that the conduct in fact caused that kind of harm to the plaintiff." *Chapman v. Mayfield*, 361 P.3d 566, 571-72 (Or. 2015). Whether an injury caused by a defendant's conduct is foreseeable is generally a factual question for the jury. *See id.* at 572. The question is withdrawn from the jury "[i]f, and only if, the court determines that the defendant's conduct clearly falls outside the community's conception of fault." *Id.*

In her F&R, Judge You recommends that I DENY summary judgment in favor of all Defendants on Plaintiffs' negligence claim. All Defendants object to this portion of the F&R, specifically Judge You's finding on foreseeability as it pertains to Young and Plaintiffs' ability

to recover purely emotional distress damages. For the reasons that follow, I agree with Judge You's ultimate recommendation and DENY summary judgment in Defendants' favor on Plaintiffs' negligence claim.

### A. Foreseeability Analysis in Regards to Young

Judge You found that a jury question exists as to whether the harm suffered by Plaintiffs was a foreseeable result of Defendants' conduct. Her analysis, however, did not distinguish between any Defendants even though at an earlier point in the F&R, she recognized an issue regarding Young's status with the PDT. Young objects to Judge You's finding on foreseeability as it pertains to her. Specifically, she argues there is no evidence that she had any involvement in the conduct that allegedly resulted in harm to Plaintiffs or that she had a responsibility to prevent such conduct. She argues that even though such evidence might exist for the other Defendants, Plaintiffs' negligence claim cannot stand against her, considering her limited involvement with the PDT.[3]

Young's argument, in large part, depends on her being in a different position vis-a-vis Plaintiffs as compared to the rest of Defendants. Although Plaintiffs' relationship with Young is different than their relationship with other Defendants, it is not so different that Young's conduct could not create a foreseeable risk of harm of the kind that befell Plaintiffs. Accepting Plaintiffs' evidence as true, Young played a significant role in the function and organization of the PDT. She managed the team's finances, helped arrange team photographs, and exercised considerable influence in team management decisions. She was also expected to complete a series of trainings that dealt with coaching and health risks for student athletes. Thus, even though her position was

---

[3] Judge You did not explicitly state whether she was applying the general standard of foreseeability or whether there is a status, relationship, or particular standard of conduct that affects the Defendants' duty. She appears, however, to analyze Plaintiffs' claim under the general standard of foreseeability. Without foreclosing the possibility of a status, relationship, or particular standard, I consider only whether Plaintiffs' claim against Young satisfies the general foreseeability standard.

unpaid, her responsibility toward Plaintiffs was indistinguishable from other Defendants for the purposes of foreseeability.

Moreover, her claim that she did not have any involvement in the alleged conduct that resulted in Plaintiffs' harm is heavily disputed. Again, crediting Plaintiffs' evidence, Young knew about the initiation tradition, as well as prior initiations that had involved inappropriate and unapproved behavior. She also threatened Plaintiffs with consequences for reporting the initiation activities and harassed Plaintiffs on social media. Under those facts, Young can hardly claim that she had no involvement in the conduct that resulted in harm to Plaintiffs.

Because there is a dispute of material fact regarding Young's relationship with the PDT and her involvement in the conduct that allegedly caused Plaintiffs' harm, I agree that whether Plaintiffs' claim against Young satisfies the general foreseeability standard is a question of fact for the jury. Thus, Young is not entitled to summary judgment on this issue.

**B. Recovery for Emotional Distress Damages**

All Defendants object to Judge You's finding on Plaintiffs' claims for emotional damages, absent any physical harm. A plaintiff who seeks damages for emotional harm may generally do so only where the harm is tied to a physical injury. *See Tomlinson v. Metro. Pediatrics, LLC*, 366 P.3d 370, 383 (Or. App. 2015). There are exceptions, however, such as when a defendant acts intentionally or "causes foreseeable, serious emotional distress and also infringes some other legally protected interest." *Philibert v. Kluser*, 385 P.3d 1038, 1041 (Or. 2016).

"In the context of emotional distress, a legally protected interest is an independent basis of liability separate from the general duty to avoid foreseeable risk of harm." *Id.* at 1042 (citation omitted) (internal quotation marks omitted). The right to recover in such instances does not arise

from *every* infringement of a legally protected interest; only from those that are "of sufficient importance as a matter of public policy to merit protection from emotional impact." *Id.* Sources from which Oregon courts have found legally protected interests include court orders, statutes, and the common law. *See e.g.*, *Id.* (considering a legally protected interest based in the common law); *Nearing v. Weaver*, 670 P.2d 137 (Or. 1983) (considering a legally protected interest based in a statute); *McEvoy v. Helikson*, 562 P.2d 540 (Or. 1977) (considering a legally protected interest based in a court order), *superseded by rule on other grounds as recognized in Moore v. Willis*, 767 P.2d 62, 64 (Or. 1988). In *Philibert*, for example, the court found that the plaintiffs, who witnessed the defendant run over and kill their brother, raised a legally-protected common law interest that allowed them to recover emotional damages without any physical harm. 385 P. 3d at 1044. Absent this independent legal source of liability, however, the plaintiffs would not have been able to recover for their purely emotional injuries. *See id.* at 1043.

### i. S.A.'s Emotional Distress

In her F&R, Judge You found that the record supports S.A.'s allegations of physical injury. She also found that the emotional injuries S.A. suffered – from the incidents on the night of initiation and from bullying in the weeks that followed – were "causally connected to the defendants' original negligent act(s)." The only defendant who objects to Judge You's conclusion regarding S.A. is Young. Specifically, Young objects to Judge You's finding that the record supports S.A.'s allegations of physical injury.[4] According to Young, S.A.'s proof of physical injuries depends on her declaration, which directly conflicts with her earlier deposition testimony. Because of this conflict, Young argues that S.A.'s statements in her declaration should be "stricken as sham."

---

[4] No defendant appears to object to the finding from Judge You that S.A.'s emotional injuries, including those that occurred in the weeks after initiation, are causally connected to the allegedly negligent acts that caused her physical injuries.

"[A] party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony." *Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991). But this rule does not preclude consideration of every seemingly inconsistent affidavit; just those that "flatly contradict earlier testimony in an attempt to 'create' an issue of fact and avoid summary judgment." *Id.* To apply the rule, a district court "must make a factual determination that the contradiction was actually a 'sham.'" *Id.*

Judge You cited *Kennedy* and concluded that S.A.'s declaration did not directly contradict her earlier deposition testimony. In her deposition, S.A. testified that she had bruises from being hit by water balloons during initiation. She denied, however, getting hurt while wrestling on the tarp and did not mention any injury from running barefoot across the gravel. Later, in her declaration, S.A. stated that she received a bruise from the wrestling match and cuts from running barefoot. She claims she forgot to mention these injuries in her deposition because she was nervous. Young argues S.A.'s excuse is belied by the fact that she made official corrections to her deposition 25 days after it was held and did not mention these additional injuries.

For the most part, I agree with Judge You that the record supports S.A.'s allegations of physical injury. First, no defendant, including Young, disputes the sufficiency of S.A.'s claim that she suffered bruises from water balloons on the night of initiation. Additionally, her declaration statement regarding the cuts and blisters on her feet does not directly contradict her prior deposition testimony. In her deposition, S.A. made no mention of injuries from running barefoot on the gravel. But Defendants did not ask if she sustained injuries from this particular incident or, more generally, if she sustained injuries in addition to the water balloon bruises.

Thus, her later description of cuts and blisters in her declaration can simply be seen as an additional explanation to her deposition rather than a contradiction.

In contrast, S.A.'s declaration statement regarding the bruise from wrestling on the tarp does appear to directly contradict her previous deposition testimony. In her deposition, she explicitly answered "no" when asked if she was hurt while wrestling and then said she had received a "large bruise" from the event. Even if this single contradiction qualifies as a "sham," however, there is still sufficient proof in the record that S.A. suffered physical injuries from the initiation, i.e., the bruises from the water balloons and the blistered feet. Furthermore, Young makes no effort to argue that these physical injuries are too slight or insignificant to support an accompanying award of emotional distress damages. Thus, I agree with Judge You that the record supports S.A.'s allegations of physical injury and DENY summary judgment in favor of Defendants on S.A.'s negligence claim.

### ii. Parents' Emotional Distress

In regard to S.A.'s parents, there is no dispute that they did not suffer any physical injury as a result of Defendants' alleged negligent conduct. Thus, as Judge You alluded to in her F&R, the only way S.A.'s parents can recover for their emotional injuries under a theory of negligence is by establishing that Defendants infringed on some other legally protected interest.

In the F&R, Judge You's findings on the existence of a legally protected interest facially relate both to the parents' claim for emotional distress and S.A.'s claim for emotional distress, to the extent her emotional distress is divorced from any physical injury. But, as noted above, I find the record supports S.A.'s allegations of physical injury, meaning that she does not need to establish a separate legally protected interest to recover damages for emotional distress arising under negligence. Therefore, my discussion on whether Plaintiffs can establish a legally

protected interest, separate from the general duty to avoid foreseeable risk of harm, applies only directly to the parents' claims for emotional distress damages.

In their summary judgment briefing, Defendants argued that no special relationship exists between Plaintiffs and any Defendants. Judge You accepted these arguments and found that the relationship between Plaintiffs and Defendants does not provide a basis for recovering emotional distress damages absent any physical harm. Judge You also found, however, that Plaintiffs' pleadings were broad enough to include other legally protected interests as potential bases to recover their purely emotional distress damages. Because Defendants only argued against the nonexistence of a special relationship, Judge You did not address Plaintiffs' other potential legally protected interests and left open the possibility that Plaintiffs could argue such interests in the future.

All Defendants object to this portion of the F&R. In essence, Defendants argue that: (1) Plaintiffs only specifically argued that a special relationship allowed them to recover emotional distress damages and it is too late for them to theorize a different legally protected interest now; and (2) in any event, there are no legally protected interests available to support Plaintiffs' claim for purely emotional distress damages. I disagree with Defendants but modify Judge You's F&R slightly.

In essence, there are really two summary judgment issues at play here. First, there is the issue of whether Plaintiffs can establish a special relationship between them and Defendants to allow recovery on a purely emotional distress claim. In their briefs, Defendants argued that a special relationship does not exist, and Judge You agreed. Under Plaintiffs' IIED claim, I found that there is a special relationship between S.A. and Defendants. But, as between S.A.'s parents and Defendants, I agree with Judge You that there is no special relationship. Thus, Defendants

are entitled to summary judgment on the issue of a special relationship that would allow S.A.'s parents to advance their claim for purely emotional harm.

The second issue is whether Plaintiffs can point to *any* legally protected interest that allows the parents to recover purely emotional damages. Again, I agree with Judge You that, although not specifically delineated, Plaintiffs' pleadings and briefing on summary judgment are broad enough to include other potential legally protected interests besides the existence of a special relationship. And, as Judge You noted, Defendants did not directly challenge these other potential interests prior to the F&R. In their objections, Defendants attempt to dispose of other potential legally protected interests that Plaintiffs might advance, but the issue has not been afforded sufficient briefing. Thus, I cannot conclude as a matter of law that S.A.'s parents do not have any other legally protected interest on which to base their claim for purely emotional harm. Defendants have not met their burden and are not entitled to summary judgment.

## IV.    Additional Matters

### A.  Substitution of District for Individual Plaintiffs

Near the end of her F&R, Judge You recommends that I DENY Defendants' request to substitute the District in place of individual defendants Beck, Schiele, Lamont, and the Nordlums. District Defendants and the Nordlums object to this portion of the F&R.

"Under the Oregon Tort Claims Act, an officer, employee, or agent of a public body may be held personally liable only when the requested prayer for relief exceeds the damages cap allowed under ORS 30.271, 30.272, or 30.273." *Kramer v. S. Or. Univ.*, 2013 WL 4782154, at *6 (D. Or. Sept. 5, 2013) (citing Or. Rev. Stat. § 30.265(4)). Here, the Third Amended Complaint does not expressly allege a specific amount of damages. As such, Judge You found

that ORS 30.265(3), which prohibits actions that allege damages below the applicable cap against individual agents of the public body, did not apply.

District Defendants and the Nordlums do not dispute that the Third Amended Complaint does not allege a specific damages amount. Rather, they highlight this fact and argue that Plaintiffs must allege an amount in excess of the applicable cap to maintain their suit against the individual defendants. Defendants also assert that Plaintiffs cannot allege damages above the applicable cap, and thus substitution of the District for individual defendants is proper.

I agree with Judge You. Even though ORS § 30.265(4) provides that an action that "alleges damages in an amount greater" than the applicable cap may be brought against individual agents of the public body, it does not state that such amount must be alleged in the complaint.[5] Indeed, in *Mclean v. Pine Eagle School District, No. 61*, this Court found that the defendants could not rely on ORS § 30.265(3) to support their motion to substitute the school district for individual defendants because the plaintiff did "not 'allege[] damages in an amount equal to or less than' the statutory damage limit." 194 F. Supp. 3d 1102, 1123 (D. Or. 2016). The Court also noted that the defendants could have requested in discovery for the plaintiff to specify her amount of damages but failed to do so. *Id.* at 1122. The Court ultimately allowed the plaintiff to orally amend her Complaint to allege damages above the statutory cap against each individual defendant. *Id.* at 1123 n.7.

Here, Plaintiffs have failed to specify the amount they seek in damages from Defendants. Similar to *Mclean*, however, Defendants cannot rely on ORS § 30.265(3) to support their motion to substitute the District for individual defendants where Plaintiffs have failed to allege a specific

---

[5] Defendants cite *Kramer* for the proposition that a court should dismiss individual defendants from tort claims when the prayer for relief does not exceed the applicable damages cap. In *Kramer*, however, this Court merely found that the requested prayer for relief did exceed the damages cap, meaning the individual defendant was a properly named defendant. 2013 WL 4782154, at *6.

amount. Defendants could have and should have sought this information during discovery. That said, Plaintiffs cannot leave their damages amount a mystery forever. In order to maintain their suit against individual defendants, Plaintiffs will eventually have to allege damages that exceed the applicable cap in accordance with ORS § 30.265(4). But, where the amount of damages has not yet been specified, I agree with Judge You and DENY Defendants' request for substitution of parties.

### B. Young's Motion to Strike Supplemental Evidence

Finally, in their response to Young's objections, Plaintiffs' introduce several new pieces of evidence, including an email between the Nordlums and their mother and additional excerpts from a deposition. Young moves to strike these new pieces of evidence, arguing that Plaintiffs did not follow the proper procedure to admit supplemental evidence.

When reviewing an F&R, a district judge may "accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3). "A party wishing to offer new evidence should ordinarily present that evidence to the magistrate judge in the form of a motion for reconsideration." *Plumb v. Prinslow*, 847 F. Supp. 1509, 1519 n.11 (D. Or. 1994). But, as FRCP 73 explicitly states, the district judge may also receive additional evidence in making a de novo determination. Generally, this involves a party moving to supplement the record and providing "an affidavit explaining why the new evidence could not have been presented to the magistrate judge in the first instance." *Id.* "New evidence should not be attached to objections without leave from the court." *Id.*

Here, Plaintiffs attached new evidence to their objections without seeking leave from the Court. However, following Young's Motion to Strike [159], Plaintiffs filed a Response [161], as

well as a Motion to File Supplemental Evidence [162]. In their response and subsequently-filed motion, Plaintiffs explain that they did not previously file the evidence because (1) they had not yet received it in the course of discovery or (2) it is in response to new arguments made by Young in her objections to the F&R. Even though Young's arguments in her objections are not completely new, I accept Plaintiffs' reasons for failing to raise the new evidence previously. Moreover, there is little if any prejudice involved in admitting the new evidence, as my conclusions on Young's objections to the F&R would be the same even without the new evidence. As such, I GRANT Plaintiffs' Motion to File Supplemental Evidence [162] and DENY Young's Motion to Strike [161].

## CONCLUSION

For the reasons stated above, I ADOPT in part and REJECT in part Judge You's F&R [142]. Accordingly, I make the following rulings on Defendants' Motions for Summary Judgment [82, 83, and 85]:

(1) Ms. Young's Motion for Summary Judgment [82] is GRANTED in part and DENIED in part. The motion is DENIED in regards to Plaintiffs' Fourth Claim but GRANTED in regards to every other claim.

(2) District Defendants' Motion for Summary Judgment [83] is GRANTED in part and DENIED in part. The motion is DENIED in regards to Plaintiffs' Fourth Claim but GRANTED in regards to every other claim.

(3) The Nordlums' Motion for Summary Judgment [85] is GRANTED in part and DENIED in part. The motion is DENIED in regards to: (1) Plaintiffs' Fourth Claim; (2) Plaintiffs' First and Seventh Claims against Kayla; and (3) Plaintiffs' Sixth Claim against Kayla for damages to S.A. In regards to all other claims, the motion is GRANTED.

(4) Plaintiffs' Motion for Summary Judgment [89] is DENIED.

Additionally, I make the following rulings on the parties' other pending requests and motions:

(1) The request to substitute the District as a defendant in place of individual defendants is DENIED.

(2) The request to strike Plaintiffs' prayer for punitive damages is DENIED.

(3) The request to strike any reference to "unknown" defendants, "Staff 1," and "Staff 2" is GRANTED.

(4) Ms. Young's Motion to Strike [159] is DENIED.

(5) Plaintiffs' Motion to File Supplemental Evidence [162] is GRANTED.


IT IS SO ORDERED.

DATED this __25th__ day of May, 2017.


/s/ Michael W. Mosman_____
MICHAEL W. MOSMAN
Chief United States District Judge