**KAREN M. VICKERS,** OSB No. 913810
kvickers@mershanlaw.com
**BETH F. PLASS,** OSB No. 122031
bplass@mershanlaw.com
MERSEREAU SHANNON LLP
111 SW Columbia Street, Suite 1100
Portland, Oregon 97201-5865
Telephone: 503.226.6400
Facsimile: 503.226.0383

    Of Attorneys for Defendants Lake Oswego School District, Heather Beck, Jennifer Schiele and Ian Lamont

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| TAISSA AND RAY ACHCAR-WINKELS, individually and as Parents and Next Friends of S.A., a minor,<br><br>    Plaintiffs,<br><br>v.<br><br>LAKE OSWEGO SCHOOL DISTRICT; an Oregon municipal corporation; HEATHER BECK, an individual; JENNIFER SCHIELE, an individual; IAN LAMONT, an individual; KAYLA NORDLUM, an individual; ASHLEY NORDLUM, an individual; and SUZANNE YOUNG, an individual,<br><br>    Defendants. | Case No. 3:15-cv-00385-MO<br><br>DISTRICT DEFENDANTS' TRIAL MEMORANDUM |

    Defendants Lake Oswego School District, Heather Beck, Jennifer Schiele, and Ian Lamont (the "District Defendants") respectfully submit the following trial memorandum.

///

///

## I. Factual Background

The plaintiffs are SA, a senior at Lakeridge High School, and her parents Ray and Taissa Achcar-Winkels ("Mr. and Ms. Achcar-Winkels"). The District Defendants are: the Lake Oswego School District; Heather Beck, Lake Oswego School District Superintendent; Jennifer Schiele, Lakeridge High School Principal; and Ian Lamont, former Lakeridge High School Athletic Director.

Lakeridge is one of two high schools in Lake Oswego, Oregon. Lakeridge has a dance team known as the Pacer Dance Team or "PDT." Defendant Kayla Nordlum ("Coach Kayla") was hired to coach the PDT in the spring of 2014. Defendant Ashley Nordlum was her assistant coach. Defendant Suzanne Young volunteered to video record the PDT's performances and handled finances. Ms. Achcar-Winkels was in charge of ordering and pressing PDT gear. She also arranged transportation for team events. In May 2014, SA auditioned for and made the PDT.

### A. *Gearhart*

The PDT went to Gearhart, Oregon for one night in June 2014. Before the trip, SA perceived that her freshman teammates were not being nice to her. During the trip, PDT members played a game called "10 fingers" or "Never Have I Ever."[1] It involves a group sitting around in a circle. One person asks a question, such as "Have you ever snuck out of the house?" or "Have you ever had sex?" Any member of the group whose response is "yes" claps and puts one finger up. The next morning the team went to the Pig 'N Pancake restaurant in nearby

---

[1] This game is frequently played by teenagers at sleepovers and has been popularized on daytime television by *The Ellen Show*.

PAGE 2 -   DISTRICT DEFENDANTS' TRIAL MEMORANDUM

Seaside for breakfast, but it was crowded so the team decided not to stay. SA and another teammate called their mothers to pick them up.

B. *August Sleepover*

The PDT had a tradition of having some kind of sleepover/initiation event. This event previously involved scavenger hunts, answering trivia questions, etc. Prior to the 2014 sleepover, the senior PDT members presented Coach Kayla with a written agenda, which she then provided to PDT parents. The event was supposed to include a movie, dinner, a sleepover at the home of team parent Kathy Fewel, and games at Lakeridge Junior High School. Coach Kayla did not know that the seniors planned to deviate from the agenda provided. Ms. Achcar-Winkels knew that no one from the school district planned to attend the sleepover.

SA was dropped off at Ms. Fewel's house on August 9, 2014. At some point in the evening, senior members of the PDT dressed the non-senior members in funny costumes; SA was dressed as Big Bird. Then the PDT drove to downtown Lake Oswego where they played truth or dare. SA's dare was to dance on top of a parked car. Next, the PDT went to Lakeridge. Other Lakeridge students were present. Some of them threw water balloons at the non-senior members of the PDT and squirted them with water guns. SA contends that she got a bruise on her back from a water balloon. The non-senior members of the team also rolled on a tarp with syrup. From there the PDT went to George Rogers Park – a local swimming area where SA swims without a life jacket. The non-senior members of the team waded in the water. They then went back to the Fewel house and spent the night. Kathy Fewel had originally planned to go with the team to all events, but at the last minute she could not go because she hurt her back moving furniture to make room for the sleepover.

Ms. Achcar-Winkels was the only adult to witness the foregoing events at Lakeridge. She planned to disguise her presence. At some point, she climbed a tree at the school and took a video of the event, which she later deleted after viewing it with her husband, Mr. Achcar-Winkels. While in the tree, Ms. Achcar-Winkels called Mr. Achcar-Winkels. They decided it was best for Ms. Achar-Winkels not to intervene or to alert the police or anyone else. Thereafter, Ms. Achar-Winkels did not tell anyone associated with the school about her presence in the tree until November 2014, at the earliest – three months after the event and over a month after her daughter had left the dance team.

Several days after the August sleepover, SA told an assistant coach some concerns regarding the sleepover. The assistant coach, in turn, reported to Coach Kayla that there had been a complaint. Coach Kayla immediately elevated the complaint to Lakeridge High School Athletic Director Ian Lamont. Lamont and Coach Kayla prepared to kick all of the senior girls off of the PDT. Lamont then contacted Mr. Achcar-Winkels; the two were previously acquainted and had been in social situations together. Mr. Achar-Winkels specifically told Lamont that he did not want an investigation or for any of the girls to be punished. Mr. Achcar-Winkels' sentiment was shared by Ms. Achcar-Winkels and SA. Lamont and Principal Schiele respected the family's request and reminded the fall sports teams about the district's no hazing policy. There were no further incidents.

C.  *Sunriver*

In late August the team went to Sunriver. There was an issue with Coach Kayla using duct tape on the girls' doors so that they would not sneak out. Coach Kayla emailed the parents about it and Ms. Achcar-Winkels immediately responded that Coach Kayla had her support. SA

reportedly had a great time at Sunriver. When the team returned to Lake Oswego from Sunriver another parent pulled Ashley Nordlum aside and told her that Ms. Achcar-Winkels was telling other parents that the senior members of the PDT forced their younger teammates to drink alcohol and do drugs during the August sleepover.[2] Coach Kayla became upset and told Ms. Achcar-Winkels by email to stop spreading gossip. Ms. Achcar-Winkels complained to Lamont and Principal Schiele about Coach Kayla's email. Lamont and Schiele took her complaint seriously and advised Coach Kayla that the email was inappropriate. Coach Kayla apologized to Ms. Achcar-Winkels.

    D. *Dance Disputes*

The PDT's competition rosters were posted in early September 2014. SA was chosen for the "pom" and "state" teams, but along with another freshman dancer, she was made an alternate for the "jazz" team. Ms. Achcar-Winkels emailed Coach Kayla the next day giving her "big hugs" but wanting to know why SA was not chosen for jazz. Coach Kayla explained her reasoning. Later in September the PDT participated in a cheer trial to see who would be able to cheer, in addition to dance, during a Friday night football game. SA did not pass the trial so she was not allowed to cheer. SA eventually quit the team. Ms. Achcar-Winkels later thanked Schiele and Lamont for their responses to her concerns, "You, as well as Ian, have handled this with such great leadership, patience, and empathy[.]" Around this time, Schiele began attending and dropping in on PDT practices to keep an eye on things. She thereafter personally attended or sent an administrator to every PDT competition.

///

---

[2] No PDT members used alcohol or drugs during the August sleepover.

PAGE 5 -   DISTRICT DEFENDANTS' TRIAL MEMORANDUM

E.  *Later Events*

SA has testified that between Sunriver and the time she left the team, nothing inappropriate happened at school.  After leaving the dance team she helped video record PDT performances.  She enjoyed spending time with a large circle of friends and participated in typical teenage activities, like attending high school football games.

Over a month after SA left the team, Ms. Achcar-Winkels sent an email to Superintendent Beck requesting a confidential meeting regarding the dance team.  Ms. Achcar-Winkels went to Beck and disclosed new and more detailed concerns and requested that the district take a new course of action.  Prior to doing so, she did not raise these issues with Coach Nordlum or re-engage Schiele and Lamont whom she previously advised had exhibited "great leadership."

Superintendent Beck commissioned – through counsel – an investigation.  After the investigation was completed it was reported in the media.  Once the district was made aware that this upset SA, both Principal Schiele and SA's school counselor, Molly Healy, checked-in with her.  Schiele also directed Healy to check-in with SA's teachers.  SA's school counselor continued to check-in with SA periodically throughout the school year.  SA told Healy that she was doing well in school and that she was not being bullied by her former teammates on the dance team.  The district also hired a company called Coaching Peace to specifically work with the students on the dance team on how to treat other students with respect and how to be positive leaders in the community.

///

///

According to both SA and Ms. Achcar-Winkels, at the time of their depositions in September 2015, SA was doing well in school. She went to Hawaii for spring break in 2015, and traveled there again during the summer for a two week camp. She has a solid friend group and an active teenage social life. SA has attended school dances, participated on the ski racing and tennis teams at Lakeridge, and she writes for the school newspaper.

## II.   Claim: Negligence

The sole remaining claim against the District Defendants is for negligence. SA brings her negligence claim against all of the District Defendants; Mr. and Ms. Achcar-Winkels only bring their negligence claim against the defendant district. To prevail, the plaintiffs must establish the following elements:

> (1) that defendant's conduct caused a foreseeable risk of harm, (2) that the risk is to an interest of a kind that the law protects against negligent invasion, (3) that defendant's conduct was unreasonable in light of the risk, (4) that the conduct was a cause of plaintiff's harm, and (5) that plaintiff was within the class of persons and plaintiff's injury was within the general type of potential incidents and injuries that made defendant's conduct negligent.

*Solberg v. Johnson*, 306 Or. 484, 490-491, 760 P.2d 867 (1988) (summarizing the holding of *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 734 P.2d 1326 (1987)). The plaintiffs will not be able to establish these elements.

## III.   Legal Issues

### A. Oregon law does not permit claims for negligently inflicted emotional distress.

Oregon law does not permit claims for negligently inflicted emotional distress. Plaintiffs can only recover emotional distress damages in narrow circumstances: "when the defendant

acted intentionally[,]" or "when the defendant negligently causes foreseeable, serious emotional distress and also infringes on some legally protected interest." *Philibert v. Kluser,* 360 Or. 698, 702, 385 P.3d 1038 (2016) (citations omitted).  A legally protected interest is "an independent basis of liability separate from the general duty to avoid foreseeable risk of harm." *Phillips v. Lincoln County Sch. Dist.,* 161 Or. App. 429, 432-33, 984 P.2d 947 (1999).

The right to be "free from physical harm at the hands of another" is the most well-recognized legally protected interest.  *Gaston v. Parsons,* 318 Or. 247, 255 n. 8, 864 P.2d 1319 (1994).  Characterizing the right to be free from physical harm as a "legally protected interest" is a different way of stating Oregon's physical impact rule.  *Philibert,* 360 Or at 703, n. 2.  Oregon courts have generally only found additional legally protected interests in four instances:  (1) intentional torts; (2) private nuisance; (3) invasion of privacy; and (4) miscellaneous cases.  *Meyer v. 4-D Insulation Co., Inc.,* 60 Or. App. 70, 652 P.2d 852 (1982).

### (1) Mr. and Ms. Achcar-Winkels cannot proceed on a negligence theory.

It is undisputed that Mr. and Ms. Achcar-Winkels did not suffer any physical injuries.  Mr. and Ms. Achar Winkels' intentional tort claims have been dismissed and they do not allege private nuisance or invasion of privacy.  Because there is no other "legally protected interest" that they can raise, grounded in the allegations contained in the Third Amended Complaint, which would permit them to recover in negligence for purely emotional harm, Mr. and Ms. Achcar-Winkels cannot recover any damages in negligence.

To the extent that these plaintiffs contend that there is a legally protected interest that would permit them to recover in negligence, the District Defendants respectfully request that the plaintiffs specifically identify the source of that interest in advance of trial.

### (2) The PDT's trip to Gearhart is irrelevant because SA does not allege that she suffered a physical injury during the trip.

The plaintiffs do not allege that SA suffered a physical injury during the PDT's June 2014 trip to Gearhart. The alleged physical injury at issue in this case did not occur until two months later. Accordingly, SA cannot base her negligence claim on the events that occurred at Gearhart.

### B. Heather Beck, Jennifer Schiele, and Ian Lamont are not proper defendants to SA's negligence claim.

Defendants Beck, Schiele, and Lamont only remain in this case on SA's negligence claim. The Oregon Tort Claims Act permits plaintiffs to name individual defendants, but only if they plead damages in excess of the applicable tort claims cap. ORS § 30.265(2)-(4). The purpose of the statute is to forestall as-applied challenges to the OTCA in the wake of *Clarke v. OHSU,* 343 Or. 581, 175 P.3d 418 (2007). In its Order and Opinion on summary judgment, this Court held that in order to keep the individual defendants in the case, the plaintiffs would need to specifically allege damages in excess of the applicable cap:

> Plaintiffs cannot leave their damages amount a mystery forever. In order to maintain their suit against individual defendants, Plaintiffs will eventually have to allege damages that exceed the applicable cap in accordance with ORS § 30.265(4).

Dkt. 165, Opinion and Order, at 20. The plaintiffs have had ample opportunity to amend the complaint to allege that SA suffered damages in excess of the cap, but they have not done so. In plaintiffs' statement of special damages, the damages related to SA total $24,147.99, excluding prejudgment interest. Accordingly, the defendant school district should be the only defendant on SA's remaining negligence claim against the District Defendants.

///

### C. The plaintiffs cannot recover punitive damages on the negligence claim.

The plaintiffs' remaining negligence claims against the District Defendants are necessarily brought under the Oregon Tort Claims Act ("OTCA"). ORS § 30.265(2). Punitive damages are not allowed for any claims subject to the OTCA. ORS § 30.269(1). The plaintiffs cannot recover punitive damages against the District Defendants.

### D. Discretionary Immunity

The plaintiffs' specifications of negligence are not clear. Some specifications may be subject to a Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50 on the basis of discretionary immunity. ORS § 30.265(6)(c) immunizes the District Defendants from tort liability arising out of the performance of discretionary functions. The statute provides:

> Every public body and its officers, employees and agents acting within the scope of their employment or duties * * * are <u>immune from liability for</u>:
> * * * * *
> (c) Any claim based upon <u>the performance of or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused</u>. (Emphasis added.)

This defense shields public bodies from tort liability based on decisions and actions that involve "room for policy judgment" or the responsibility for deciding "the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued." *Mosley v. Portland School Dist. No. 1J*, 315 Or. 85, 92, 843 P.2d 415 (1992), quoting with approval from *McBride v. Magnuson*, 282 Or. 433, 437, 578 P.2d 1259 (1978).

///

///

DATED: October 6, 2017.

        M<small>ERSEREAU</small> S<small>HANNON</small> <small>LLP</small>

        *s/ Karen M. Vickers*
        **KAREN M. VICKERS,** OSB No. 913810
        kvickers@mershanlaw.com
        **BETH F. PLASS,** OSB No. 122031
        bplass@mershanlaw.com
        503.226.6400
            Of Attorneys for Defendants Lake Oswego School District, Heather Beck, Jennifer Schiele and Ian Lamont