**Robert D. Scholz**, OSB #773379
E-mail:  rscholz@msmlegal.com
MacMILLAN SCHOLZ & MARKS, P.C.
Attorneys at Law
900 SW 5th Avenue, Suite 1800
Portland, Oregon  97204
Telephone:  (503) 224-2165
Facsimile:  (503) 224-0348

　　　*Attorneys for Defendant Suzanne Young*


# UNITED STATES DISTRICT COURT

# DISTRICT OF OREGON

# PORTLAND DIVISION

| | |
|---|---|
| **TAISSA AND RAY ACHCAR-WINKELS, individually and as Parents and Next Friends of S.A., a minor**, <br><br> Plaintiffs, <br><br> v. <br><br> **LAKE OSWEGO SCHOOL DISTRICT, an Oregon municipal corporation; HEATHER BECK, an individual; JENNIFER SCHIELE, an individual; IAN LAMONT, an individual; KAYLA NORDLUM, an individual; ASHLEY NORDLUM, an individual; and SUZANNE YOUNG, an individual; and UNKNOWN STAFF, unknown individuals**, <br><br> Defendants. | Case No. 3:15-cv-00385-MO <br><br> **TRIAL MEMORANDUM OF DEFENDANT SUZANNE YOUNG** |

Defendant Suzanne Young ("Young") submits the following Trial Memorandum:

### *INTRODUCTION*

Plaintiffs Taissa and Ray Achcar-Winkels (hereinafter "Plaintiffs" or "Plaintiff

Parents" or "Plaintiff Mother" or "Plaintiff Father") filed this action on behalf of their

daughter S.A., and themselves, against the Lake Oswego School District and several of

its employees alleging misconduct in connection with the Lakeridge High School Pacer

Dance Team ("PDT"), in the summer of 2014.  Individual defendants include District employees Heather Beck, Superintendent of the District, Lakeridge High School Principal, Jennifer Schiele, Lakeridge High School Athletic Director, Ian Lamont, and Lakeridge High School PDT coaches, Kayla and Ashley Nordlum.  Also named as a defendant is non-employee, Suzanne Young ("Young"), a parent of a former PDT member.  Young's daughter had been a PDT member for school years 2010-2013. During that period, Young had assisted the PDT as a volunteer parent, with photography, team outfit ordering, promotion and finances.  A new PDT coach was to be hired in 2014. Young was asked by other parents to continue on, even though her daughter had graduated, until a replacement could be found.  Plaintiff Mother was to be that replacement.

Plaintiffs allege that their daughter, S.A., a member of PDT, was the subject of hazing by other PDT members and that the defendants, including Young, are liable for that alleged conduct.

On August 21, 2015, this Court issued its Findings and Recommendations (F&R, Dkt. 54; Opinion & Order Adopting F&R, Dkt. 63) dismissing all nine claims for relief asserted against Young in Plaintiffs' Second Amended Complaint ("SAC").  Four claims were dismissed with prejudice (hazing, child abuse, failure to report failure and retaliation); and five without prejudice, with leave to amend.  Plaintiffs amended.  The current 172 paragraph Third Amended Complaint ("TAC"; Dkt. 61) was further reduced by plaintiffs to three claims against Young:

- Fourth Claim for Relief (Negligence);
- Fifth Claim for Relief (Negligent Infliction of Emotional Distress);
- Sixth Claim for Relief (Intentional Infliction of Emotional Distress).

Young moved for summary judgment on all three claims.  The Court granted the motion against plaintiffs' claim Sixth Claim for Relief, Intentional Infliction of Emotional Distress ("IIED"). (F&R, Dkt. 142 at 49; Opinion & Order adopting in part and rejecting in part, F&R, Dkt. 165).[1]

In granting Young's motion for summary judgment on the IIED in the TAC, that Court ruled that Young's alleged name calling conduct was not sufficiently egregious to support the claim. (*Id.*).  Plaintiffs did not object to the ruling dismissing the IIED claim against Young.

The Court denied Young's motion for summary judgment against the Fourth Claim for Relief (Negligence) and Fifth Claim for Relief (Negligent Infliction of Emotion Distress).

## <u>ARGUMENT</u>

### 1.    <u>*Fourth Claim for Relief (Negligence)*</u>

Plaintiffs' Fourth Claim for Relief, entitled "Negligence," and asserted *against all defendants*, alleges the following breaches of duties at TAC ¶150:

  a.  Failing to comply with and enforce District policies on hazing;
  b.  Failing to adequately supervise, train, and hire qualified coaches or administration;
  c.  Failing to restrain peer to peer and third-party harassment;
  d.  Failing to restrain assaults and batteries;
  e.  Failing to prevent child abuse;
  f.  Failing to report child abuse;
  g.  Condoning, allowing and participating in retaliation by students, parents; staff (including Staff I), volunteers, and other third-parties;
  h.  Failing to ensure that coaches were timely equipped with proper training certifications;
  i.  Failing to comply with OSAA Rules; and
  j.  Failing to comply with Oregon law and allowing child abuse to occur.

---

[1] In the August 21, 2015, Findings & Recommendations, the Court dismissed the claim for IIED in the SAC because plaintiffs conceded that it did not meet the standard for an IIED claim against Young because it only alleged name calling.  (F&R, Dkt. 54 at 15).

TAC ¶150 includes certain allegations against Young in spite of the fact that the Court previously dismissed with prejudice all claims in the SAC for hazing (Fourth Claim for Relief) and retaliation (Fourteenth Claim for Relief), stating:

> As plaintiffs concede, they have no private right of action for hazing or retaliation under Oregon law.  Instead they must pursue a claim for common law negligence, battery, or some other intentional tort independent of any duty under ORS 339.362.

(F&R, Dkt. 54).  The Court had also dismissed the SAC claim for child abuse (Twelfth Claim for Relief) with prejudice because Plaintiffs conceded the claim was more properly based in negligence.  (*Id.* at 13-14).  And the Court dismissed with prejudice the SAC claim for failure to report child abuse (Thirteenth Claim for Relief of the SAC) because Young had no duty to report any alleged child abuse.  (*Id.* at 16).

Young had no obligations to make sure that coaches had training certificates, nor did Young have an obligation to obtain any coach training.  Plaintiffs do not allege specific OSA regulations against Young.  Young was not subject to the OSAA rules.  Plaintiffs cannot establish any violation of any OSAA rule by Young that harmed Plaintiffs.

The reshuffling of most of Plaintiffs' allegations in the TAC against Young into the heading of "negligence" did not address the fact that this Court *also dismissed Plaintiffs' negligence claim* in the SAC, stating that:

> [B]oth those claims [negligence and negligent infliction of emotional distress] fail to allege sufficient facts to hold Young liable for any negligent conduct.  Plaintiffs must allege that Young directly participated in the tortuous conduct, or aided or substantially assisted in the hazing of S.A.  Plaintiffs do not allege that Young was present during or had any involvement in the hazing events.  Plaintiffs do not allege that Young knew that S.A. would be subject to harm during those events, knew that anyone intended to or was likely to harm S.A. during the events, or that Young provided or procured an opportunity for S.A. to be harmed. . . .  To

> state a plausible negligence claim, plaintiffs must allege that Young
> participated in the tortuous conduct or substantially assisted others in
> harming S.A.

(*Id.* at 14).

The TAC realleges three events in the summer of 2014 that purportedly give rise to Plaintiffs' negligence claims against Young: (1) a "bonding trip" in Gearhart, Oregon, on June 28-29, 2014; (2) an "initiation" on August 9-10, 2014, in Lake Oswego, Oregon; and (3) "mandatory boot camp" in Sunriver, Oregon, on August 24-28, 2014. (TAC ¶47). Plaintiffs do not allege, nor is there any evidence, that Young directly participated in any tortuous conduct or aided or substantially assisted in the hazing of S.A. Plaintiffs do not allege that Young was present at any of the hazing events. Plaintiffs do not allege, nor is there any evidence, that Young was present for the initiation. (TAC ¶69.) Plaintiffs do not allege, nor is there any evidence, that Young *had any* involvement in the hazing events. Plaintiffs do not allege, nor is there any evidence, Young knew S.A. would be subject to harm during those events, knew that anyone intended to or was likely to harm S.A. during the events, or that Young provided or procured an opportunity for S.A. to be harmed.

Plaintiffs instead contend Young's purported knowledge of or involvement in *prior* PDT events during past years made her responsible for what occurred in the summer of 2014.

## A.  *Young's Limited Role and Involvement with the PDT*

In an effort to create a duty on the part of Young that might give rise to some liability based on negligence for the alleged hazing events, even though she had nothing to do with any of the three events, Plaintiffs restated Young's alleged role and position

with the PDT in the TAC.[2]  Plaintiffs allege that at all times Young was a volunteer, an agent of the District, and was in charge of the finances and public relations for the PDT. (TAC ¶31).  None of these allegations are sufficient to impose some obligation on the part of Young toward protecting S.A.  Plaintiffs also allege that Young was the manager of the PDT, a member of the coaching staff and also the team chief financial officer. (TAC ¶31).  Plaintiffs further allege Young received compensation from the PDT for her services (TAC ¶32), and that the District gave Young the authority to engage in contracts on behalf of the PDT.  (TAC ¶32).

Labeling Young as a manager of the PDT does not enhance Young's obligations to or relationship with S.A.  Plaintiff Mother testified that Young managed the accounts, the finances, the photography, video and posters.  Plaintiff Mother didn't know if Young supervised the team members or whether Young disciplined any members.

Brooke Mattern was the PDT coach for seven years, ending in the 2013-2014 season.  Mattern testified she did not know if Young had a specific title; Young was the bookkeeper for the PDT, did public relations, video, photos, hosted parties with the parents and did ordering.

With regard to the allegation that Young received compensation from the PDT for her services (TAC ¶32), Young received a total of $300 in conjunction with assisting a commercial photographer with a team photo shoot and poster preparation.  That is the only money Young has ever received from the PDT.  Young never was given authority to engage in contracts on behalf of the PDT.

---

[2] Noteworthy, in spite of these new allegations of enhanced status, and still continuing to allege Young was an agent of the District, plaintiffs abandoned the two claims under 42 U.S.C. § 1983 previously dismissed.

Young was not a member of the PDT coaching staff.   Athletic Director Lamont characterized Young's role as dealing with finances and accounts.  Lamont never considered Young as a coach under the OSAA guidelines.  According to Lamont, if Young was called team manager that did not equate with Young being a coach; many team managers are students.[3]  Young never took any of the required classes to be qualified as a coach under the OSAA, nor did she ever apply to become an OSAA certified coach.  The OSAA rules do not apply to Young.  Young has no dance training or dance experience.  Young has never taught any dancers in any capacity.  Young did not attend or plan team practices.  On occasion she would stop by practice to drop off checks, photographs or other items; she videotaped a few practices for former coach Mattern.  According to S.A., Young did not train team members.

With regard to being the team CFO, Young used that term jokingly in an e-mail to Athletic Director Lamont concerning Plaintiffs' request for a full refund of the entire activity fee, as opposed to a pro rata refund amount that Plaintiff Mother had previously agreed to with Young after S.A. quit the team.  In a letter to Principal Schiele on the subject of the refund, Plaintiff Father referred to Young as "the bookkeeper."

---

[3]  One PDT member testified as to Young's involvement as follows:  "Q.  Did she have any involvement with the dance team over this last school year 2014/'15?  A.  Yes.  Q.  What was her involvement with the team?  A.  She helped assist, or I know she helped manage the money.  That was about it."  Another team member testified:  "Q.  Did Suzanne Young ever attend your practices?  A.  Not for the whole time.  Sometimes she would come at the beginning just to say 'Hi' or drop off, like, posters, for instance."  A third team member testified:  "Q.  Tell me what Suzanne Young's role is with this dance team or what it was last year.  A.  She is just the mom.  Well, her daughter graduated last year, but she just helped a lot with, like, financial stuff, like helping us and getting, like, apparel and she did our poster pictures, because she is good with photography.  Q.  Did she come to your practices?  A.  This year or last year?  Q.  Last year.  Well, this school year, present school year.  A.  Maybe, like, one or two to, like, give Kayla money or, like transfer money, something to do with the, like, account.  She would, like, watch the routine once and then she left."

The TAC does not allege, nor is there any evidence, that Young had the authority or obligation to stop any of the alleged conduct that Plaintiffs contend harmed S.A. There is no evidence that ever Young assumed any authority that would create any duties to protect S.A. from harm.

**B.  *Young Did Not Have any Knowledge, or Assist with, or Participate in any Alleged Misconduct by PDT Members***

Plaintiffs assert Young previously had a daughter on the team and gained substantial knowledge of the team's traditions, including traditions of an initiation process that amount to hazing.  (TAC ¶33).  It is further alleged that Young knew about inappropriate games (not specified) traditionally played by the team.  (TAC ¶33).

In an effort to tie Young to the initiation activities, Plaintiffs allege that Young hosted at least one prior year's initiation activities/traditions (not identified) at her home.  (TAC ¶34).  It is also alleged that Young attended numerous bonding (not specified) and other traditional team events (not identified) (TAC ¶35); and that Young previously collected money from team parents to facilitate initiation activities.  (TAC ¶36).

These assertions suggesting that Young should have known about the initiation activities in advance of the evening were made in SAC ¶42, but the Court ruled that "knew or should have known about the activities" was not enough.

Indeed, Young had no involvement in planning, organizing, supervising or participating in any of the three events.  Young had no knowledge as to what activities were going to take place at Gearhart.  Young had no knowledge when initiation would take place and what activities were planned.  The initiation activities are alleged to have been arranged by the senior team members.  (TAC ¶61).  Evidence will establish that Young was not included in e-mails to others, including Plaintiff Parents, about initiation

details.  Young did not know that initiation had even taken place on August 9, 2014, until mid-September 2014.  Young was only aware of the Sunriver event as a result of helping secure a rental home in Sunriver for the team and writing checks for the lodging and expenses incurred that week by the team, including reimbursing Plaintiff Mother for vans Plaintiff Mother rented for transportation.  Young had no knowledge of the specific activities planned for Sunriver.

Plaintiffs seek to conflate the general knowledge of initiation as a traditional event with knowledge as to what activities had taken place during past initiations and what might take place at a future initiation that could cause harm to S.A.  The assertion that Young had allowed or encouraged inappropriate behavior at past initiations is quite frankly offensive, as is the notion that she had a basis to expect that unacceptable behavior would take place at initiation. Young had no interest in the event because her daughter had graduated.  Young was aware that the team traditionally held an initiation event.  That was no secret.  Former coach Brooke Mattern was aware of the initiation tradition and that part of the event was without a chaperone.  But knowing that initiation took place does not equate with knowledge that team members might cause harm to S.A.  Young and her husband had hosted team sleepovers before, but Young had never attended a bonding or other event that involved any activities which might cause harm to a team member.  Young never collected money from team parents to facilitate initiation activities.  Young's limited knowledge of initiation included activities where team members dressed up in costumes and drove around Lake Oswego doing funny dances in public. She understood that on one occasion team members had been blindfolded, but she was not aware whether the team members were driven around blindfolded, she just saw

that blindfolds were being made at her house.  When Young hosted one sleepover, the girls came home with flour on them the seniors had thrown on the under classmen.  She reported that observation to the then team coach, Brooke Mattern.

Specifically with regard to each event:

### i. *Gearhart*

Prior to Gearhart, Plaintiff Parents were aware that team members had played the 10 fingers game on previous outings. (TAC ¶54.)[4]  Prior to the Gearhart event, Plaintiff Mother went to coach Kayla Nordlum and told Nordlum she heard the game had been a long-standing tradition and she wanted it stopped.  Plaintiff Mother did not recall asking Young to do anything to make sure the game was not played in Gearhart.  Plaintiff Mother never expected Young to do something about the 10 fingers game.  Once she learned about the 10 fingers game, Plaintiff Mother thought the appropriate step was to notify coach Kayla Nordlum.

S.A. didn't feel that being exposed to the 10 fingers game caused her any psychological injury; it was just something she did not want to hear.  Despite her daughter having been exposed to the other girls who had been playing the 10 fingers game, Plaintiff Mother did not feel it was in her daughter's best interest to take her off the dance team.[5]  According to S.A., nobody hazed her at Gearhart.  S.A. does not blame Young for anything that happened at Gearhart.  Plaintiff Mother was still glad to have Young as the manager of the team even after the 10 fingers game had occurred at Gearhart.

---

[4] According to the former coach, Brooke Mattern, the 10 fingers game was common.  She had heard of it in high school and college.  She expected her team members had played it and she never advised them not to play the game.  Parent Kelly Savage was aware of the game.
[5] After learning the 10 fingers game had been played in Gearhart, Plaintiff Father did not call anyone in the school administration to tell them he was upset that the game had been played.

### ii. *Initiation*

S.A. does not blame Young for anything that occurred during initiation. S.A. did not ask to quit the team after initiation.

Plaintiffs allege that Young told Plaintiff Mother about initiation traditions. Another parent of a freshman team member had concerns about initiation, so Plaintiff Mother inquired of Young. Young told Plaintiff Mother of her experience hosting the initiation sleepovers and the type of activities that Young was aware of from prior initiations. Plaintiff Mother did not ask Young to take any steps to make sure that initiation activities would be appropriate. Plaintiff Mother went to coach Kayla with her concerns, which Plaintiff Mother felt was the appropriate manner to deal with her concerns.

In the days after the initiation, Plaintiff Mother did not notify Young what Plaintiff Mother had witnessed at the high school on the night of initiation. Plaintiff Mother went to the high school the evening of initiation and climbed a tree to observe the initiation events Plaintiffs allege took place in TAC ¶¶64-67. Plaintiff Mother videoed the activities with her cell phone, but later deleted the video. While in the tree, Plaintiff Mother did not call law enforcement or Athletic Director Lamont, coach Kayla Nordlum, other parents or Young. Plaintiff Mother called her husband from the tree, but he did not come to the high school. He told her not to call the police. At the end of the activities at the school, Plaintiff Mother watched the team members get into cars and drive away. Plaintiff Mother then went home. Plaintiff Parents allowed S.A. to continue with the other unsupervised activities that evening, then the sleepover at the house of another team member after the activities. Plaintiff Parents allowed S.A. to participate in the team car

wash activity the next morning despite what happened the night before.  Plaintiff Parents

contacted Athletic Director Lamont and Principal Schiele within one week after

initiation.  In spite of what Plaintiff Mother had witnessed and learned from S.A. about

the initiation activities, they did not complain to Lamont or Schiele that Young was

responsible for what happened.  In spite of the initiation events, Plaintiff Parents decided

to allow S.A. to participate in the Sunriver boot camp less than three weeks later.

Plaintiff Parents arranged for the rental vans to take the team on that trip.  Plaintiff

Mother never told Young she felt Young was responsible for what happened at initiation.

Plaintiff Mother wrote a long confidential letter to Superintendent Beck describing the

initiation events, but she never mentioned Young or that she felt Young had any

responsibility for what happened.

### iii.  *Sunriver Boot Camp*

Discussion of Young's responsibility for events that took place in Sunriver is very

simple.  Neither S.A., Plaintiff Mother nor Plaintiff Father contend Young was

responsible for the events that took place in Sunriver.  S.A. testified that she was not

hazed at Sunriver.

### C.  Negligence - Special Relationship and Foreseeability

The facts at trial will not support a claim for negligence against Young, regardless

of the type of injury (physical or emotional) asserted by Plaintiffs.

As discussed above, the evidence offered by Plaintiffs in response to Young's

Motion for Summary Judgment did not satisfy the legal standards the Court had

articulated earlier in this case in connection with Rule 12 Motions.

In its more recent Opinion and Order with regard to the Motions for Summary Judgment (Dkt. 165), the Court concluded that Plaintiffs did not prove a special relationship imposing any duty on the part of Young to protect Plaintiffs from harm by third parties.  The Court, however, apparently concluded that foreseeability of harm alone was sufficient to create potential responsibility on the part of Young.  This was despite the fact that Plaintiffs failed to offer any evidence that Young was present during or had any involvement in the hazing events, that Young knew that S.A. would be subject to harm during those events, knew that anyone intended to or was likely to harm S.A. during the events, or that Young provided or procured an opportunity for S.A. to be harmed (the standard articulated in the Rule 12 Order). The Court has noted that while some defendants were aware that there had been prior PDT initiations, nothing suggests the conclusion that defendants condoned or approved the unapproved activities about which S.A. complains. (F&R, Dkt. 142 at 142).  But regardless, as to Young, there will not be any factual issue that should be submitted to the jury since foreseeability of harm by itself does not create any obligations on the part of Young *in this circumstance*.   While *Fazzolari* eschewed the term "duty," a defendant must still have some role in the injury producing event in order to be deemed negligent.  This was explained in *Fortney v. Crawford Door Sales Corp. of Oregon*, 97 Or. App. 276, 280, 775 P.2d 910, 912 (1989), a case where directed verdict for the defendant was affirmed:

> Defendant also contends that plaintiff "would impose liability for a falling ladder where the defendant did not own it, did not use it and did not touch it."  We agree with defendant's implicit suggestion that, although *Fazzolari* has changed the role of duty in negligence law, it has not eliminated the rule that a defendant must have *some* responsible involvement with an event in order to be found negligent for its occurrence.

(Emphasis in original).

Page 13 – TRIAL MEMORANDUM OF DEFENDANT SUZANNE YOUNG

Similarly, in *Nord v. Wetmore*, 105 Or. App. 246, 804 P.2d 501 (1991), plaintiff sought to impose negligence liability on defendant Wetmore, who drove assailants to the location where an assault occurred and let the assailants out of the car near the plaintiffs (with whom there had been an altercation moments before).  The Court affirmed directed verdict for defendant Wetmore, observing:

> Plaintiffs rely on *Fazzolari v. Portland School Dist. No. 1J*, 303 Or. 1, 734 P.2d 1326 (1987), and . . . contend that, under the *Fazzolari* rationale, a jury could find that Rhonda should reasonably have foreseen when she drove back into the parking lot that the result would be that her passengers would attack plaintiffs.
>
> Plaintiffs buttress their argument by referring to evidence that would support the inference that Rhonda was aware of the first encounter between Kevin and Milar and of details that should have excited her awareness that Milar felt violently disposed toward Kevin. In our view, all of that is beside the point. *The question is not whether she should reasonably have foreseen what occurred, <u>but whether her involvement in the events was such that she could or had to do anything</u> to prevent what she might have foreseen.*  Plaintiffs do not contend that Rhonda had the right to continue driving Milar anywhere that he did not want to go or to prevent him from leaving the vehicle after his request. They do not suggest that she could have been liable if she had let him out of the car at the parking lot exit, when he asked to be let out. Their view is that, somehow, she became negligently involved by putting the car in reverse and taking him the short distance to the place where he indicated that he wanted to go.
>
> As the trial judge suggested in granting the directed verdict, *Rhonda was either a willing participant in the assault or she was essentially a bystander*. The jury found that she was not actively involved.  As we said in *Fortney v. Crawford Door Sales Corp.,* 97 Or.App. 276, 280, 775 P.2d 910 (1989):
>
>> "[A]lthough *Fazzolari* has changed the role of duty in negligence law, it has not eliminated the rule that a defendant must have *some* responsible involvement with an event in order to be found negligent for its occurrence." (Emphasis in original.)

(105 Or. App. 246, 249-250 (emphasis added).  There will not be evidence at trial that Young had some responsible involvement with any conduct that resulted in harm to Plaintiffs, or that *she was required to do anything* to prevent any conduct directed toward S.A., or that she was a "willing participant" in any conduct directed toward S.A.  At the

time of the initiation, Young was a volunteer parent of a former dance team member who had limited involvement with the Pacer Dance Team.  She had no supervisory authority over the students, nor did she assume or exercise such authority. Such authority was not allowed by District rules. Volunteers are only allowed to work with students in a supervised environment. There is no evidence that Young, unlike perhaps the Lakeridge Administration or the PDT Coaching Staff, might have some potential responsibility for controlling the events that Plaintiffs contend caused S.A. harm.  (*See Fortney v. Crawford Door Sales Corp. of Oregon*, 97 Or. App. 276, 280, 775 P.2d 910, 912 (1989)). Young simply does not stand in the same position as the other defendants.  The Court's comment suggests that although the Court is not relying on a special relationship to create a duty it arguably did so. (Opinion & Order, Dkt 165 at 12, fn. 3).

With all due respect, the Court erred in concluding that Young's limited involvement with the PDT was "not so different" from the other defendants that her conduct could not create a foreseeable risk of harm of the kind that befell plaintiffs (Opinion & Order, Dkt. 165 at 12).  Collecting dues, buying team clothing, paying bills, and other routine finance and promotion work on a volunteer basis does not raise Young to a management level, nor does helping with team photographs.  There is no evidence Young exercised "considerable influence in team management decisions." (*Id*).  There is no evidence Young was obligated to complete a series of trainings that dealt with coaching and health risks for student athletes.  Plaintiffs cannot point to any OSAA rule establishing such a requirement.  Athletic Director Lamont testified Young was not a coach.  The conclusion that Young's "responsibility was indistinguishable from the other defendants for purposes of foreseeability" (*Id*. at 13) is simply not correct.

The Court states that Young's "claim that she did not have any involvement in the alleged conduct that resulted in Plaintiffs' harm is heavily disputed." (*Id.* at 13). The Court notes that Young knew about the initiation tradition. (*Id*. at 13). What part of the tradition? The part that coaches and parents knew about or the unauthorized, unsupervised stunts that students came up with? And what inappropriate initiation behavior did Young know about that involved inappropriate and unapproved behavior, flour on the students, which she reported to the prior coach? The 10 Fingers game, which was well known and which she reported to Plaintiff Mother? And what information did Young have that she did not convey to Plaintiff Mother so that Plaintiff Mother could talk to the District before initiation?

### D.  Plaintiff Parents' Claims for emotional distress

Plaintiff Parents assert solely emotional injury. Since Young had no special relationship with Plaintiff Parents, Plaintiff Parents can only recover against Young if they can prove that Young "negligently cause[d] foreseeable, serious emotional distress *and also* infringe[d] some other legally protected interest." (*See Philibert v. Kluser*, 360 Or. 698, 702, 385 P.3d 1038 (2016) (emphasis added)). As the Court is aware, Young moved for summary judgment with regard to Plaintiff Parents claims. In concluding that there were questions of fact precluding summary judgment, Young respectfully submits that the Court failed to recognize that Plaintiffs offered no opposition to Young's Motion for Summary Judgment on this issue. Plaintiffs' Response to Defendant Young's Motion for Summary Judgment (Dkt. 100) merely incorporated by reference Plaintiffs' Response in Opposition to Defendant Lake Oswego School District ("LOSD") et al.'s Motion for Summary Judgment on this issue. (Dkt. 101).

In Plaintiffs' LOSD Response, at page 26, when addressing the subject of legally protected interest, Plaintiffs only asserted, "District Defendants and Nordlum Defendants each exercised independent judgment for S.A. and her parents, plaintiffs relied on them for protection from the very type of harm S.A. suffered from."  Young is not included.

In her Reply in Support of her Motion for Summary Judgment (Dkt. 128, at 10), Young pointed out "plaintiff parents offered no response to Young's arguments that they could not recover in negligence because they alleged solely psychic injury."

Plaintiff Parents in this case have not alleged that Young infringed upon any "legally protected interest," that allows Plaintiff Parents to recover for psychic injury due to harm caused to S.A.  There will not be proof at trial that Young infringed upon a "legally protected interest."  In *Philibert,* the legally protected interest was described as "the interest in avoiding being a witness to the negligently caused traumatic injury or death of a close family member. . . . Plaintiffs there watched as their younger brother was crushed by a pickup truck—a violation of their interest in not witnessing such a shocking and tragic event."  (*Id.* at 707).  Plaintiffs' proof will in no way come close to the legally protected interest judicially identified in *Philibert*.  Indeed, Judge You's Findings and Recommendations (Dkt. 142) noted that the record on summary judgment did not support a finding of sufficient serious injury to S.A. to bring the claim within the bystander recovery rule announced in *Philibert*.  (F&R, Dkt. 142 at 58, fn. 26).  There is no other legally protected interest that would require Young (a volunteer and the parent of a former dance team member) to somehow protect Plaintiff Parents from sustaining emotional distress as a result of alleged hazing of S.A. by other dance team members.

//

Punitive Damages

Plaintiffs cannot recover punitive damages against Young.  *See* ORS 30.265(2).

Plaintiffs, in opposing Defendants' Motion for Judgment on the Pleadings, argued that

ORS 30.265(2) is not applicable because Plaintiffs' TAC "alleged that defendant Suzanne

Young was sometimes acting as an agent but also sometimes acting as a volunteer."

(TAC ¶ 31, Dkt. 61). That is not a correct statement.  Plaintiffs alleged in the TAC ¶31

that "At all times relevant herein, Young acted with approval and authority of the District

and as an agent of the District." While Plaintiffs go on to allege that at other times Young

acted as an approved volunteer, the "at all times relevant" language precludes the

punitive damage claim.  And Plaintiffs proposed jury instructions including language that

a volunteer can be an agent.

### E.  *All Other Negligence Particulars Against Young Fail*

 In summary, Plaintiffs cannot "show" that Young participated in, aided, or

procured the alleged hazing or child abuse.

The allegations that Young failed to comply with District and OSAA rules

(allegations 150(a) and (i)) are without any factual foundation.  The duty to report child

abuse and hazing does not place any requirements on a volunteer, only on school

employees.[6]

The remaining alleged components of the negligence claim in TAC ¶31 also fail.

There are no underlying allegations or facts that establish a duty and thereby subject

---

[6] As stated earlier, Young should not even be required to defend these claims given the child abuse and
hazing allegations against her were dismissed with prejudice.  Contrary to the TAC ¶31, as a volunteer,
Young was not obligated to report hazing, harassment, intimidation or bullying under District Policy 7J.
The policy, attached as Exhibit 2 to the TAC, specifies that reporting by volunteers is encouraged, but is
not mandatory.  District Policy 7J related to reporting of suspected child abuse, attached as Exhibit 9 to the
TAC, does not impose any reporting obligations on a volunteer.

Young to liability for "failing to restrain peer to peer and third-party harassment" or "failing to restrain assaults and batteries" or for "condoning, allowing and participating in retaliation by students, parents; staff (including Staff I), volunteers, and other third-parties." (TAC ¶¶150(c), (d) and (g)).

Finally, there is no evidence supporting the claims that Young had a duty and therefore failed "to adequately supervise, train, and hire qualified coaches or administration" or failed "to ensure that coaches were timely equipped with proper training certifications." (TAC ¶¶150(b) and (h)).

### F. _No Other Intentional Conduct by Young Directly Against S.A._

Plaintiffs allege Young took intentional actions to harm S.A. (TAC ¶166). According to S.A., Young never did anything to specifically harm S.A. She testified Young never bullied, harassed or hazed S.A. Plaintiff Father was not aware that Young ever said anything to S.A. that Plaintiff Father considered bullying, harassment or retaliation. Plaintiffs do not include Young as someone who allegedly caused S.A. to leave the team. (TAC ¶88).

//


//


//


//

S.A. testified she never felt she needed to confide in Young about any concerns about the events in the summer of 2014.  On occasion when she would see Young, S.A. would give Young a big hug.  S.A. assisted Young with regard to activities related to the team after S.A. quit the team with the approval of Plaintiff Mother.

Dated this 6th day of October, 2017.

Respectfully submitted,

MacMILLAN, SCHOLZ & MARKS, P.C.

s/Robert D. Scholz
ROBERT D. SCHOLZ,  OSB # 773379
Of Attorneys for Defendant Suzanne Young

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that I served the foregoing TRIAL MEMORANDUM OF DEFENDANT SUZANNE on October 6, 2017, upon the attorney(s) listed below via through CM/ECF electronic filing of the same.

| | |
|---|---|
| Leta C. Gorman<br>Diane R. Lenkowsky<br>JORDAN RAMIS PC<br>Attorneys at Law<br>Two Centerpointe Dr. 6th Fl.<br>Lake Oswego, OR  97035<br>EM:    leta.gorman@jordanramis.com<br>          diane.lenkowsky@jordanramis.com<br><br>   Of Attorneys for Plaintiffs<br><br><br>Luke Reese<br>Garrett Hemann Robertson<br>1011 Commercial St.<br>Salem, OR  97301<br>EM:  lreese@ghrlawyers.com<br><br>   Of Attorneys for Defendants Kayla and<br>Ashley Nordlum | Matthew A. Levin<br>Markowitz Herbold PC<br>1211 SW 5th Avenue, Ste. 3000<br>Portland OR  97204<br>EM:  mattlevin@markowitzherbold.com<br><br>   Co-counsel for Defendant Suzanne Young<br><br>Karen M. Vickers<br>Mersereau Shannon LLP<br>1 SW Columbia St., Ste. 1600<br>Portland, OR  97258<br>EM:  kvickers@mershanlaw.com<br><br>   Of Attorneys for Defendants Lake Oswego<br>School District, Jennifer Schiele, Ian Lamont,<br>and Heather Beck |

DATED this 6th day of October 2017.

MacMILLAN, SCHOLZ & MARKS, P.C.

s/Robert D. Scholz
ROBERT D. SCHOLZ, OSB # 773379
Of Attorneys for Defendant Suzanne Young